## Case No. 11,518.

### QUIRK v. CLINTON.

[16 Betts, D. C. MS. 68.]

District Court, S. D. New York. May 3, 1849.

WITNESS — COMPETENCY — INTEREST — SHIPPING AGENT — CHARTER — AFFREIGHTMENT — ADMIRALTY JURISDICTION.

[1. Brokers who negotiate a contract of affreightment, their commissions not being dependent on its performance, are competent witnesses in a suit for breach.]

[2. A broker whose principal writes him to charter a vessel has authority to make a binding verbal agreement to that end.]

[3. The admiralty jurisdiction of federal courts extends to suits upon contracts of affreightment.]

[Cited in Marshall v. Pierrez, Case No. 9,-130.]

This action was brought [by William Quirk against Peter Clinton] to recover damages for non-performance of an agreement of affreightment. The libellant wrote his broker at this place on the ――― to charter a vessel for him; and on the 7th of June, 1848, the broker made an agreement at this port with the respondent owner of the brig Growler to perform a voyage from Wilmington, N. C., to London, and carry a cargo of turpentine, freight 4/6 sterling per barrel for cargo under deck, and 3/6 for cargo on deck, with five per cent. primage. The vessel was to be dispatched from New York to Wilmington in four days, and taking in her lading being allowed 15 days there and 15 at London. If there was less than 13 feet of water on the inner bar at Wilmington, the libellant was to pay lighterage; if over that, the lighterage was at the expense of the respondent. This agreement was made by the brokers of the parties in presence of the respondent, who fully assented to and approved it. A memorandum was drawn up in writing for him to sign, but he deferred signing it, saying he would call at the office of libellant's broker the next day with his captain and sign the charter-party. A charter-party was drawn out in conformity to the agreement, and the respondent was called upon to execute it the next day, but he declined doing it, and refused to perform the voyage on the contract entered into. On the tenth of July thereafter the broker procured another vessel for the libellant, and had to pay 4/6 sterling freight per barrel under deck, and

4/3 on deck, with five per cent. primage. On the 26th June the libellant wrote his broker to cause this action for damages to be brought. The libellant's broker and respondent's broker both testify to the same facts respecting the contract, and both were objected to by the respondent as incompetent witnesses, because they were each to have received a commission upon the charter party,—the one for obtaining the vessel; the other for obtaining the freight.

E. C. Benedict, for libellant.

W. L. Morton, for respondent.

BETTS, District Judge. There is no ground to exclude the evidence of the brokers. The commissions they were to receive were not dependent upon the performance or the contract. They were earned, it is true, so soon as the bargain was made, and only upon the fact that the bargain had been made, but the result of this action in no way determines their right to commissions, or supplies evidence upon which they can enforce a recovery of them. If both brokers are to be regarded as acting for the libellant, the customary commissions would be divided between them; but they would not be a charge on the respondent, and he is directly liable to Brookman only on the supposition that the latter acted in his behalf as his broker. In neither case, however, does his liability arise out of or stand affected by the event of this suit. If a commission is claimed of him by Brookman because a freight was obtained for his vessel, the demand cannot be maintained upon Brookman's testimony, nor its recovery be any way aided by the decree rendered in this case should it be in favor of the libellant. So, also, Mr. Smith must look solely to the libellant for his compensation, and his demand must be supported by other evidence than his own testimony or the decree in this cause.

The objections to the support of the action most relied upon on the argument were that the arrangement made by the brokers and respondent was not a hiring of the vessel, but only an agreement leading to a charter party, and could not as such be enforced in this court, or that, if a charter party, it was a verbal one, not obligatory on the respondent, and, moreover, not so on the libellant, because the authority given by him to Smith, his broker, was to enter into a written charter party, and he could bind his principal by no other form of engagement. The letter of the libellant directing Smith to procure a vessel is not to be understood as prescribing the method of doing the business, but would authorize his acting for the libellant either through a written or verbal contract. It conferred upon him an agency in this particular which might be exercised in any way appropriate to carrying the authority into effect. Story, Ag. § 60. The power need no more be exercised by specialty than be conferred by it. Id. §§ 44, 47. And especially in commercial transactions an express authority given by informal instruments, such as letters of advice or instruction, is construed with liberality. Id. § 82. I have no doubt the broker was acting with the fair authorization of the letter of instructions given by the libellant in entering into a verbal contract of affreightment with the respondent. When a vessel is let to freight by an instrument in writing, the contract is called a "charter party." Spring v. Gray, 6 Pet. [31 U. S.] 164. But it is not necessary under the law merchant to have a specific engagement in writing to constitute a legal letting of a ship; a hiring without writing is valid. 3 Kent, Comm. 204; 1 Valin, 618; Muggridge v. Eveleth, 9 Metc. [Mass.] 233. The only difficulty is as to the sufficiency and certainty of the proof when the agreement is by parol. In the present case the evidence is clear and uncontradicted, and shows the agreement as deliberately entered into by the respondent, and was confided in by the libellant's agent. There was perfect mutuality in it. If the libellant had neglected or refused to supply the freight stipulated, the respondent, by holding his vessel ready to perform on his part and tendering a performance, could have enforced a full recompense for his loss of time and profits. Story, Cont. §§ 127–129; Abbott (by Perkins) 257.

The jurisdiction of the court over contracts of affreightment, whether evidenced by charter parties, bills of lading, or a penal hiring of a vessel, or agreement to transport cargo, has been so often considered by this court, and decided in favor of supporting it, that I do not consider it now an open question here or in the circuit court of this district. I consider the doctrine in effect established by the supreme court. [New Jersey Steam Nav. Co. v. Merchants' Bank] 6 How. [47 U. S.] 392; [Commercial Bank of Cincinnati v. Buckingham] 5 How. [46 U. S.] 341. This court will continue to take cognizance of cases of that class until the supreme court shall expressly lay down a different rule of decision.

Decree for libellant, and reference to commissioner.