## GRAHAM v. OREGON R. & NAVIGATION CO.

(District Court, S. D. New York. March 1, 1905.)

ADMIRALTY JURISDICTION—MARITIME CONTRACT.

A contract on the part of respondent, a railroad company operating a line of road having a seaport terminus, to furnish to libelant all the cargoes which it then had or might thereafter have at such port during the term of the contract for shipment over sea, and on the part of libelant to furnish steamships to carry such cargoes, is maritime, and an action for its breach is within the admiralty jurisdiction.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, § 156. Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.]

In Admiralty. On exceptions to amended libel.

Thomas D. Rambaut and J. Parker Kirlin, for libellant.
Maxwell Evarts and Robert D. Benedict, for respondent.

ADAMS, District Judge. The original libel herein was filed on the 11th day of August, 1904. Exceptions thereto were duly filed by the respondent, alleging in substance that a maritime cause of action was not set forth and the court consequently had no jurisdiction. These exceptions were brought on for argument and sustained in an opinion, dated the 16th day of December, 1904. A decree was subsequently entered thereupon, granting leave to the libellant to amend within twenty days. This leave was availed of and an amended libel filed the 22nd day of December, 1904.

The amended libel substitutes new allegations for the first three paragraphs of the original libel. The libel in such respect now reads as follows:

"First: The libelant, Robert A. Graham, is a resident of the City of New York, and the respondent, the Oregon Railroad & Navigation Company, at all the times hereinafter mentioned, was, and it still is a corporation duly organized and existing under and by virtue of the laws of the State of Oregon and has an office and property in this District. At the times mentioned, the respondent was engaged in operating a system of railway of more than one thousand miles in extent in the northern portion of the United States, and had a terminus at Portland, Oregon, with wharves suitable for the use of Ocean going steamships. It was also at such times engaged in obtaining from various places in the United States, and forwarding from its terminus in Portland, cargoes of merchandise destined for points in China and Japan, and it was likewise engaged in receiving at its terminus in Portland, cargoes which had been brought by steamships from ports in China and Japan to the port of Portland.

Second: Prior to, and on October 1, 1900, the libelant, Robert A. Graham, and the respondent, the Oregon Railroad & Navigation Company, acting through its duly authorized agents, were engaged in negotiations for the purpose of forming a contract for the furnishing of vessels by the libelant to carry cargoes which the respondent represented to the libelant that it had, and would have regularly, from time to time, for shipment from Portland to points in China and Japan. The respondent then and there represented to the libelant that the above mentioned cargoes would amount to four thousand tons, or more, per month, all which it promised that it would ship on the vessels to be furnished by the libelant. On October 1st, 1900, these negotiations culminated in a contract between the libelant and the respondent, under and in pursuance of which it was agreed between the parties that the libelant should furnish five steam vessels, each capable of carrying four thousand tons of measurement cargo, to be operated in a monthly service between Portland, Oregon, and ports in China and Japan, to carry cargoes to be furnished by the respondent for shipment at Portland on the west bound voyages. It was further agreed that the respondent should furnish exclusively to the vessels so to be provided by the libelant, the cargo or cargoes that it then had, and all the cargo or cargoes that it might thereafter have at Portland for shipment to China and Japan, which it was represented would amount to four thousand tons or more per month, to be carried by the libelant's vessels, and that the respondent should also receive at Portland any and all cargo destined for inland points of the United States, which the vessels of the libelant might bring from ports in China and Japan to the port of Portland, and there deliver to the respondent on its terminal wharves. The duration of the contract, it was agreed, should be three years from October 1st, 1900.

It was further agreed that the libelant's vessels should receive as compensation for the carriage over sea of the cargoes taken from or brought to

Portland one-half of the through freight on all goods shipped under through bills of lading from interior points in the United States to China and Japan, and one-half of the through freight on all cargo which the libelant or its agents might obtain for shipment in China and Japan, to interior points in the United States, and that the vessels should receive the entire freight on all westbound cargo that originated in Portland, and on all eastbound cargo which was not destined for points beyond Portland.

Certain stipulations and regulations for the establishment and operation of the steamship service contemplated by the foregoing agreement and for the government of certain incidental matters in connection therewith, were, on that day, drawn up and embodied in a memorandum, a copy of which is hereto annexed, marked Appendix A, and made a part of this amended libel; but the terms and stipulations of this memorandum were conditioned and based on the undertaking of the respondent, which constituted an essential part of the agreement between the parties, that the respondent should furnish to the libelant's vessels, for shipment at Portland, all the cargo or cargoes which it then had, or might thereafter have, during the life of the contract, for shipment from Portland to points in China and Japan, and should receive at Portland all through cargoes which the vessels might bring to that port.

Third: Thereafter, pursuant to the terms of the aforesaid agreement between the libelant and the respondent, the libelant furnished to the respondent five steamers, each capable of carrying 4,000 tons of measurement cargo, for the establishment of a steamship service between Portland, Oregon, and ports in China and Japan, and cargoes were furnished for the said steamships by the respondent, in pursuance of said agreement, for several months thereafter, and until about the 10th of April, 1901, and in doing so delivered, under through bills of lading, cargoes and merchandise to the libelant at Portland for transportation by his said line of steamships, and received at said port cargoes from said steamships which had been brought from Asiatic ports, and paid freight on such cargoes to the libelant.

The name of the line under which the steamers were operated, in pursuance of the agreement between the parties, was the Oregon & Oriental Steamship Company."

The respondent has filed exceptions to the amended libel as follows:

"I. That it appears upon the face of the libel herein that this Court is without jurisdiction of the cause of action set forth in said libel.

II. That the contract and agreement alleged in said libel is not a contract and agreement civil and maritime, and that an action for damages for the breach thereof is not within the admiralty and maritime jurisdiction of this Court.

III. The respondent further excepts to the first sentence of the Second Article as immaterial, and not stating any part of the alleged agreement, or of the alleged cause of action for the breach thereof.

IV. And the respondent further excepts to the second sentence of the second article, and also to the allegation in said second Article 'which it was represented would amount to four thousand tons or more per month', as immaterial, no cause of action in said amended libel being alleged as founded on either representations or promises of the respondent, outside of the alleged agreement."

The respondent contends that the amended libel adds nothing to the original libel as to the libellant's part of the agreement, nor as to the respondent's part of the same but simply modifies one of the former allegations and urges that Appendix A still contains all the particulars of the agreement now set forth and even if that is not so, it is certainly alleged by the libellant that Appendix A continues under the amended libel to form a part of the agreement between the parties. It is further urged that the contract now alleged is nothing but a traffic agreement covering as well the land transportation on the railroad as the

maritime transportation on the steamships; that neither can be separated from the other and that the question now presented has been practically decided in the sustainment of the former exceptions.

The allegations of the amended libel, however, are quite different from those of the original. The agreement contained in Appendix "A," instead of being a statement of the terms of the agreement as formerly alleged, is now described as merely incidental to the main contract, which is set forth in the paragraphs quoted above. The allegations of the new libel set forth a contract for the furnishing of cargoes on the respondent's part and of steamships on the libellant's part to carry the cargoes. Such a contract is essentially maritime within the authorities. Quirk v. Clinton, 20 Fed. Cas. 146; Patterson v. Baltimore Steam Packet Co. (D. C.) 101 Fed. 296; Id., 106 Fed. 736, 45 C. C. A. 575, 66 L. R. A. 193; Id. (D. C.) 106 Fed. 957.

With respect to the immateriality of certain statements in the amended libel alleged in the respondent's 3rd and 4th Exceptions, I do not deem it necessary at this time to consider the exceptions in such respect. When evidence is offered to establish the criticised parts, the question of materiality can be determined.

Exceptions overruled.