Williams, Judge,
delivered the opinion of the court:
The plaintiff, a corporation duly organized under and by virtue of the laws of the State of Missouri, having its main place of business in the city of St. Louis, in said State, was at and during the times herein mentioned, engaged in the *265 manufacture of bags of various sorts and the sale thereof in this and other countries.
The petition sets out the organization of the United States Shipping Board Emergency Fleet Corporation, under and by virtue of the act of Congress of September 7, 1916, and the various Executive orders of the President of the United States issued and promulgated under the act of June 15, 1917, and other acts of Congress, transferring to the United States Shipping Board and to the United States Shipping Board Emergency Fleet Corporation all the power and authority vested in the President in the said acts in relation to the taking over of title or possession by purchase or requisition of constructed vessels, or parts thereof, or charters therein, and the operation, management and disposition of such vessels, and of all other vessels theretofore -or thereafter acquired by the United States; also the resolution of the United States Shipping Board of November 26, 1917, providing that all vessels owned by the Shipping Board on behalf of the United States be chartered to the United States Shipping Board Emergency Fleet Corporation, the Division of Operations, of the said corporation to have charge of the said vessels, subject to the direction and supervision of the board.
The petition then avers:
“ That pursuant to and by virtue of the powers granted and delegated to it by the several acts of Congress and the several Executive orders as above described, and by the said resolution of the United States Shipping Board, passed November 26, 1917, the Division of Operations of said Emergency Fleet Corporation, acting solely as an agency of the United States of America, and not on its own behalf, operated merchant vessels owned by the United States, and entered into agency agreements with various firms and corporations for the operation and/or management of such vessels;
“That the Munson Steamship Line, a corporation duly organized and incorporated under and by virtue of the laws of the State of New York, was at the times hereinafter mentioned employed as an agent of the United States through the agency of the United States Shipping Board Emergency Fleet Corporation to manage and/or operate, between the Gulf ports of the United States and Buenos *266 Aires, Argentina, merchant vessels belonging to the United States and under control, management, and operation of its agent, said Emergency Fleet Corporation; that the S. S. Laurel hereinafter referred to was a merchant vessel belonging to the United States, and during the times hereinafter mentioned, was being operated by the Munson Steamship Line as a duly authorized agent of the United States.
“ That on or about September 10, 1919, claimant sold 300 bales of wheat bags to H. B. Elliot & Sons, to be shipped from the United States in November, 1919, and thereafter delivered in Buenos Aires, Argentina, S. A., said bags to be consigned to claimant with bill of lading and draft attached ‘ order notify ’ the said purchasers; that thereafter, on or about October 29, 1919, claimant and the defendant, through its agents, the United States Shipping Board Emergency Fleet Corporation and the Munson Steamship Line, entered into a contract, known as a ‘ booking contract,’ under the terms of which the defendant, in consideration of the lawful freight paid, and/or agreed to be paid, by claimant to the defendant, agreed to furnish claimant cargo space for the carriage of said wheat bags from Mobile, Alabama, to Buenos Aires, Argentina, S. A., upon the S. S. Laurel, a vessel belonging to the defendant and scheduled by its agents to sail during the month of November, 1919, for the said port of Buenos Aires; that, under said contract said wheat bags were to be tendered to the defendant’s agents at Mobile, Alabama, in time to be loaded on said S. S. Laurel prior to its said sailing date; that said contract, identified on the records of defendant’s agent by the number B-853 and/or B-850, was made between claimant and defendant’s agent, Munson Steamship Line acting through the Western Freight Agent of said steamship line in St. Louis, Missouri, confirmed by telephone with the principal office of said Munson Steamship Line in New York, and again confirmed in writing to claimant by said Western Freight Agent of the said Munson Steamship Line by letter, dated October 29, 1919, copy of which is attached hereto marked ‘ Exhibit A,’ and asked to be read as a part hereof; that, on information and belief, said contract, B-853, referred to in said ‘ Exhibit A ’ is in writing and on file in the records of said Munson Steamship Line, but claimant, although repeated request has been made therefor, has never been able to obtain a copy of said £ booking contract ’ or to procure a copy of the records of said Munson Steamship Line with respect to said ‘ booking contract ’ and its confirmation as set forth in ‘ Exhibit A.’
“ That claimant delivered said 300 bales of wheat bags to its agent, the Mobile and Ohio Railroad Company, at St. *267 Louis, Missouri, to be carried by it to Mobile, Alabama, and there delivered to the defendant for carriage to Buenos Aires, Argentina, S. A., as follows:
Nov. 4, 1919, 100 bales, Car SAL 29,903.
Nov. 10, 1919,100 bales, Car CCCSTL 45,401.
Nov. 15, 1919, 100 bales, Car NYC 219,267.
“ The said 300 bales of wheat bags were thereafter transported by said Mobile and Ohio Railroad Company to, and they arrived at, Mobile, Alabama, on or about November 25, 1919, and prior to the sailing on or about the 4th or 5th day of December, 1919, of said S. S. Laurel from Mobile, Alabama; that defendant’s agents were notified of their said arrival and said bales of wheat bags were tendered by claimant’s agent to the defendant’s agent, Munson Steamship Line, in ample time for loading upon defendant’s said S. S. Laurel; that following the said tender of delivery of the said 300 bales of wheat bags, and on or before December 5,1919, the defendant’s agents issued an ocean bill of lading covering said 300 bales of wheat bags, acknowledging the receipt of said wheat bags and delivered the usual and customary number of copies of said ocean bill of lading to claimant’s banker to be attached to draft covering said shipment; that, notwithstanding the tender by the claimant, through its agent, Mobile and Ohio Railroad Company, of delivery of said 300 bales of wheat bags, and, nothwith-standing the issuance of its ocean bill of lading acknowledging receipt and acceptance of said 300 bales of wheat bags for shipment on the S. S. Laurel, the defendant’s agents, in breach of the £ booking contract ’ with said claimant, failed and neglected to load or place, or cause to be placed, said bales of wheat bags upon its said S. S. Laurel, but, on the contrary, and subsequent thereto, to wit: On or about the 12th day of January, 1920, placed said bales of wheat bags on defendant’s vessel, Decatur Bridge, for transportation of the same to Buenos Aires, Argentina, S. A., and said bags were transported on the S. S. Decatur Bridge and arrived in Buenos Aires, Argentina, S. A., on the 16th day of February, 1920; that between the date of arrival of said 300 bales of wheat bags in Mobile, to wit: On or about November 25, 1919, and the sailing of the S. S. Deeatur Bridge on, to wit: January 12, 1920, there was no occasion or reason for claimant to attempt to dispose of said wheat bags, and it owed the defendant no duty to do so, for the reason that claimant had contracted to sell and deliver said wheat bags in Buenos Aires, Argentina, S. A., and had no reason to believe, and did not then know, that the purchasers of said bags would refuse to accept them if they *268 -were delayed in arriving at Buenos Aires, Argentina, S. A., after December 31, 1919, and claimant did not in fact know that said purchasers would refuse to accept said wheat bags .until, to wit: On or about January 16, 1920,.and claimant has never, either expressly or impliedly, waived or intended ■to waive its right to recover for the breach of contract herein complained of.
“ That by reason of the failure and neglect of defendant and/or its duly authorized agents to place and load said ‘.bales of wheat bags on the S. S. Laurel according to the terms of its ‘ booking contract,’ claimant suffered great loss and damage in the sum of $22,425.00 because its said pur-chasers declined to aceept said BOO bales of wheat bags or to pay claimant .the price agreed to be paid therefor on account of the delay in their arrival at Buenos Aires, Argentina, S. A., and claimant says that the measure of its damages is the difference between what claimant would have received from the sale of its said wheat bags if they had been transported on the S. S. Laurel and delivered to claimant’s purchasers in Buenos Aires, Argentina, S. A., in accordance with claimant’s said contract of sale, and the amount that claimant did receive for said wheat bags after they had been transported on the defendant’s vessel ‘ Decatur Bridge,’ and sold for its account in Buenos Aires, Argentina, S. A., after rejection by its said purchasers on account of delay in arrival at Buenos Aires, Argentina, S. A.”
The question raised by the demurrer is whether or not the contract sued on, which in the petition is designated as a “.booking contract,” is a maritime contract.
While the contract is not set out in the petition, its provisions are definitely alleged as follows:
“ On or about October 29, 1919, claimant and the defendant, through its agents, the United States Shipping Board Emergency Fleet Corporation and the Munson Steamship Line, entered into a contract known as a ‘ boolring contract,’ under the terms of which the defendant, in consideration of the lawful freight paid, and/or agreed to be paid, by claimant to the defendant, agreed to furnish claimant cargo space for the carriage of said wheat bags from Mobile, Alabama, to Buenos Aires, Argentina, S. A., upon the S. S. Laurel, a vessel belonging to the defendant and scheduled by its agents to sail during the month of November, 1919, for the said port of Buenos Aires; that, under said contract said wheat bags were to be tendered to the defendant’s agents at Mobile, Alabama, in time to be loaded on said S. S. Laurel prior to its said sailing date; that said contract, *269 identified on the records of defendant’s agent by the number B-853 and/or B-850, was made between claimant and defendant’s agent, Munson Steamship Line, acting through the western freight agent of said steamship line in St. Louis, Missouri, confirmed by telephone with the principal office-of said Munson Steamship Line in New York, and again-, confirmed in writing to claimant by said western freight agent of the said Munson Steamship Line by letter, dated' October 29, 1919, copy of which is attached hereto marked;
'Exhibit A,’ and asked to be read as a part hereof.”
The letter of confirmation referred to reads as follows:
Munson Steamship Line, File C-302„.
82 Beaver St., N. Y.
Reavis Jackson,
Western Freight Agent,
418 Olive Street, St. Louis, Mo-.
St. Louis, Mo., October 29th, 1919.
H. & L. Chase Bag Co.,
(Attention Mr. Tacke)

l¡.-26 N. Main Street, St. Louis, Missouri.

DeaR SiR: Agreeable to conversation with you yesterday,, beg to advise Munson Line contract
B-853 covers 300 bales burlap bags for Steamer Laurel. B-851 covers 300 bales burlap bags for late November-clearance.
For Buenos Aires.
Yours very truly,
MuNSON Steamship' LiNe,
R. JacksoN,

Western Freight Agent.

CC MSSL ST
The plaintiff contends that the contract in this case is merely the agreement of the defendant, through its agent, to - furnish cargo space on the S. S. Laurel for 300 bales of burlap bags; that it is what is known as- a “ booking contract,” and was preliminary to the maritime contract of affreightment to be entered into later upon the issuance of a bill of lading by the defendant on its S.. S. Laurel; that the loss which is the basis of the plaintiff’s claim accrued to it because of the breaching of this contract in the refusal of the defendant to furnish to the- plaintiff the cargo space as agreed and at the time agreed.
It is contended that the contract in question is not unlike a contract to procure marine insurance,, or a. contract to - *270 obtain a charter for a vessel, which contracts are held not to be maritime contracts. It is argued on behalf of the plaintiff that if the contract sued upon had been a contract between the plaintiff and a broker for the latter to furnish cargo space on the S. S. Laurel, and he had failed ,in the performance of the contract resulting in the identical loss sued for in this case, such a contract would not have been a maritime contract, and that admiralty would not have had jurisdiction of the cause of action.
It is true that a mere preliminary agreement, eventually leading to the making of a maritime contract, does not fall within the admiralty jurisdiction, and that under this rule the courts have held that the admiralty courts are without jurisdiction of a contract to procure a charter party or a contract to procure marine insurance or to solicit freight.
The reason for this rule is obvious from the very essence of admiralty jurisdiction, which applies only where the substance of the whole contract is maritime, it not being a sufficient foundation for admiralty jurisdiction that there is involved in a contract some ingredients of a maritime nature. Corpus Juris, 1, sec. 68, p. 1267. See cases cited.
The instant case, in our opinion, does not come within the class of cases above stated and is clearly distinguishable from the cases cited in the plaintiff’s brief.
The plaintiff here, having goods which it desired to transport by water from Mobile, Alabama, to Buenos Aires, South America, entered into a contract with the Munson Steamship Line, then controlling and operating the S. S. Laurel for and on behalf of the defendant, to furnish it cargo space for the carriage of the said goods on its vessel, the S. S. Laurel, at a designated time, from Mobile, Alabama, to Buenos Aires, South America.
This was not a preliminary contract leading to the making of a maritime contract later, but was a complete and definite contract for the performance of a maritime service. Contracts of this character are held by the courts to be within the admiralty jurisdiction. Patterson v. Baltimore Steam-Packet Co., 106 Fed. 957; Graham v. Oregon R. & Navigation Co., 135 Fed. 608; American Hawaiian S. S. Co. v. Willfuehr et al., 274 Fed. 214.
*271 In Patterson v. Baltimore Steam-Packet Go., supra, the court said:
“ It is urged on behalf of the exceptant that the contract was not a maritime contract, but was a contract merely preliminary and leading to a maritime contract, and therefore not of admiralty cognizance. It is true that when the goods are actually put on board the ship a bill of lading is customarily given, which sets forth with particularity the stipulations of the contract of affreightment. But a bill of lading is not necessary. Ben. Adm. (3d Ed.) sec. 286. In this case there was, if the allegations of the libel be true, a concluded agreement that the exceptant, on the one hand, would be furnished space on a steamer or steamers of the Johnston Line sailing late in June, 1898, for 1,000 bales of cotton, from Baltimore to Liverpool, and, on the other hand, that the exceptant would ship the cotton, and pay 26 cents per 100 pounds freight. Is this not a final contract for a purely maritime service ? If the ship or ships were named, I think it could not be questioned. Does the fact that, instead of a named vessel, the engagement is for a vessel or vessels of an established line of steamers, sailing regularly from the port, and made with the agents known to be acting for those steamers, alter the nature of the contract or the service ? ***** * *
“ Whether the contract is maritime or not depends solely upon the subject matter and nature of the service to be performed, and results from the contract itself, and not from the performance of it. The Pacific, 1 Blatchf. 587, Fed. Cas. No. 10,643.”
Even if the plaintiff’s position that the contract sued upon was merely a preliminary contract leading to the making of a maritime contract, by the issuance of a bill of lading when the goods were placed on board the defendant’s vessel, the S. S. Laurel, the plaintiff can not maintain its suit in this court. The bill of lading, which is admittedly a maritime contract, was actually issued in strict conformity with the terms of the so-called booking contract. The petition alleges—
“ That following the said tender of delivery of the said 300 bales of wheat bags, and on or before December 5, 1919, the defendant’s agents issued an ocean bill of lading covering said 300 bales of wheat bags, acknowledging the receipt of said wheat bags and delivered the usual and customary number of copies of said ocean bill of lading to claimant’s *272 banker to be attached to draft covering said shipment; that, notwithstanding the tender by the claimant, through its agent, Mobile and Ohio Railroad Company, of delivery of said 300 bales of wheat bags, and, notwithstanding the issuance of its ocean bill of lading acknowledging receipt and acceptance of said 300 bales of wheat bags for shipment on the S. S. Laurel, the defendant’s agents, in breach of the booking contract ’ with said claimant, failed and neglected to load or place, or cause to be placed, said bales of wheat bags upon its said S. S. Laurel, but, on the contrary, and subsequent thereto, to wit: on or about the 12th day of January, 1920, placed said bales of wheat bags on defendant’s vessel Decatur Bridge for transportation of the same to Buenos Aires, Argentina, S. A.”
The bill of lading issued in the manner set out aforesaid, prior to the sailing of the S. S. Laurel, superseded the preceding or booking contract, and became, and is the contract between the plaintiff and the defendant covering the transportation, by the defendant, of the plaintiff’s goods from Mobile, Alabama, to Buenos Aires, S. A. The Henry S, Grove, 292 Fed. 502; The Caledonia, 157 U. S. 124.
The plaintiff’s loss was occasioned by the reason of the failure of the defendant to furnish the plaintiff cargo space and to carry its goods upon the S. S. Laurel in accordance with the terms of the bill of lading issued by the defendant’s agents at the time of the receipt and acceptance of such goods for shipment.
However, so far as the plaintiff’s right to maintain an action in this court for the loss sustained by it because of the failure of the defendant to transport the plaintiff’s goods on the S. S. Laurel, it is immaterial whether such loss, grew out of the breach of the booking contract of October 29, 1919, or a breach of the stipulations of the bill of lading issued prior to the sailing of the said vessel from the-port of Mobile, on December 4th or 5th, 1919. In either case the contractual relations of the plaintiff with the defendant have reference solely to the transportation of goods-by water upon a named vessel at a designated time.
Under the provisions of section 2 of the suits in admiralty act of March 9, 1920 (41 Stat. 525), the plaintiff’s right of action for a breach of either contract lies in the district *273 court of the United States in a proceeding in admiralty The jurisdiction of the district court is exclusive. Johnson v. Fleet Corporation, 280 U. S. 320.
The demurrer will, therefore, be sustained, and the petition dismissed. It is so ordered.
Whaley, Judge; LittletoN, Judge; GreeN, Judge; and Booth, Chief Justice, concur.