GEORGE B. MOREWOOD, JOHN R. MOREWOOD, AND FREDERIC R. ROUTH, APPELLANTS, *v.* LORENZO N. ENEQUIST, OWNER OF THE BRIG GOTHLAND.

The admiralty jurisdiction of the courts of the United States extends to contracts of charter-party and affreightment. These are maritime contracts within the true meaning and construction of the Constitution and act of Congress, and cognizable in courts of admirality, by process either *in rem* or *in personam.*

Appellants should not expect this court to reverse a decree of the Circuit Court, merely upon a doubt created by conflicting testimony.

THIS was an appeal from the Circuit Court of the United States for the southern district of New York.

It was a case in admiralty, arising under the following circumstances:

The brig Gothland, owned by Enequist, was chartered by Burt, Myrtle, & Co., of Batavia, to proceed to Padung, on the island of Sumatra, there to receive a quantity of coffee; to return thence to Batavia and complete her cargo, and deliver the same in New York, freight to be paid by the assignees of the bills of lading on delivery of the cargo.

It was admitted that the bills of lading were assigned for value to the appellants, composing the firm of G. B. Morewood & Company.

Enequist first filed a libel *in rem* against the cargo for the amount of the freight; but after some proceedings which it is not necessary to mention, this action was discontinued, and a libel *in personam* filed, which is the present case. The respondents alleged that, owing to the neglect of the carrier, the coffee, black pepper, and cassia, were damaged to the amount of $4,720.60, which they claimed as a deduction from the freight. The whole freight claimed was $9,160.56, with interest from April, 1853.

The District Court referred the case to a commissioner, who reported that the freight due in September, 1857, was $11,372.56, for which amount a decree was rendered, with costs.

The case, being carried to the Circuit Court, was there tried on the appeal from the District Court and on additional evidence taken by the respondents. The decree of the District Court was affirmed with costs, and the respondents appealed to this court.

It was submitted on printed arguments by *Mr. Dodge* and *Mr. Johnson* for the appellants, and by *Mr. Donohue* for the appellee.

The counsel for the appellants considered that the jurisdiction of the courts of the United States over an action on contract by a libel *in personam* in admiralty upon a contract of affreightment was still an open question, and therefore proceeded to argue it. The elaborate arguments against the jurisdiction filed by them, and for it by *Mr. Donohue*, are omitted by the reporter, in deference to the opinion of the court.

Mr. Justice GRIER delivered the opinion of the court.

The ship Gothland, owned by Enequist, the libellant, was chartered by Burt, Myrtle, & Co., of Batavia, to proceed to Padung, on the island of Sumatra, there to receive a quantity of coffee; to return thence to Batavia and complete her cargo, and deliver the same in New York, freight to be paid by the assignees of the bills of lading on delivery of the cargo. The

libellants' suit is *in personam* against the consignees or assignees of the cargo, for the amount of freight stipulated in the charter-party.

The only defence alleged in the answer is, that a portion of the merchandise delivered was not in good order, and had been greatly damaged by sweating, caused by want of proper ventilation on the voyage.

This defence was fully discussed and examined both in the District and Circuit Court, and a decree was entered for the libellant in both.

In the argument in this court, the counsel, without abandoning the original defence, have expended much learning and ingenuity in an attempt to demonstrate that a court of admiralty in this country, like those of England, has no jurisdiction over contracts of charter-party or affreightment. They do not seem to deny that these are maritime contracts, according to any correct definition of the terms, but rather require us to abandon our whole course of decision on this subject, and return to the fluctuating decisions of English common-law judges, which, it has been truly said, " are founded on no uniform principle, and exhibit illiberal jealousy and narrow prejudice."

The errors of those decisions have mostly been corrected by legislation in the country of their origin; they have never been adopted in this.

We do not feel disposed to be again drawn into the discussion of the arguments which counsel have reproduced on this subject. The case of the New Jersey Steamboat Company *v.* the Merchants' Bank of Boston (6 How., 334) was twice argued (in 1847 and 1848) at very great length. The whole subject was most thoroughly investigated both by counsel and the court. Everything connected with the history of courts of admiralty, from the reign of Richard the Second to the present day—everything which the industry, learning, and research, of most able counsel could discover, was brought to our notice. We then decided that charter-parties and contracts of affreightment are " maritime contracts " within the true meaning and construction of the Constitution and act of

Congress, and cognizable in courts of admiralty by process either *in rem* or *in personam.*

Lord Tenterden admits that, by the maritime law, "the ship is bound to the merchandise and the merchandise to the ship; and it is a necessary consequence that the contract is as much a maritime contract as a bottomry or respondentia bond, or mariners' wages." See Abbot on Shipping. But in England they cannot have the benefit of this lien or privilege, because courts of common law cannot enforce a lien *in rem*, and will not permit the court of admiralty to do it. Our District Courts had exercised this jurisdiction without question till the case just mentioned came before this court. Since that time no objection has been raised in this court to the jurisdiction of courts of admiralty over contracts of affreightment. See Rich *v.* Lambert, 12 Howard, 347, &c., &c.

The numerous briefs of argument filed in this case contain nothing which was not brought to our notice in the former discussions of this subject, except some remarks on the case of the People's Ferry Co. *v.* Beers, (20 How., 401.) It has been contended that this case has established the doctrine, that the jurisdiction of our courts of admiralty under the Constitution should be restrained to that which they were permitted to exercise in the Colonies before the Revolution. The court decided in that case that a contract to build a ship is not a maritime contract; and though, in countries governed by the civil law, courts of admiralty may have taken jurisdiction of such contracts, yet that in this country they are purely local, and governed by State laws, and should be enforced by their own tribunals. As a cumulative argument, it was stated that the act of Congress of 1789 was not intended to conflict with the rights of the State tribunals to enforce contracts governed by their own laws, and not strictly of a maritime nature; that such contracts were thus considered at the time the Constitution was formed, and had never been previously cognizable in courts of admiralty as within the category of maritime contracts; and that the contest of jurisdiction in that case " was not so much between rival tribunals as between distinct sovereignties claiming to exercise power over contracts, property,

and personal franchises."  The arguments used in stating the opinion of the court must be referred to the subject before it, and construed in connection with the question to be decided. They had no reference whatever to any former decisions of this court on the question now (it is hoped for the last time) mooted before us.

There is much testimony in the record of this case, on the issue made by the answer, with the usual discrepancy and contradiction in matters of opinion. The question whether the cargo was injured through the negligence and fault of the master, or whether the damage to it was caused by the innate vice of the cargo and its necessary exposure on the voyage, was a very complex one, depending wholly on the opinion of experts. Where witnesses of proper skill and experience have formed their judgment from a personal examination of the subject of the controversy, their opinions are generally more worthy of confidence than those elicited by hypothetical questions, which may or may not state all the accidents and circumstances necessary to form a correct conclusion.

The decision of this case by the District and Circuit Courts is supported by the testimony of numerous witnesses, who had both the capacity and experience to judge, and had examined the *subject* of the controversy. We see no reason to dispute the correctness of their judgment, or to enter into a particular examination of the conflicting testimony in order to vindicate the correctness of our own. We have frequently said that appellants should not expect this court to reverse a decree of the Circuit Court merely upon a doubt created by conflicting testimony.

The judgment of the Circuit Court is affirmed with costs.