## Donoughe *v.* Hubbard and others.[1]

*(Circuit Court, W. D. Pennsylvania.   May 19, 1886.)*

1. PATENTS FOR INVENTIONS—HANDLES FOR CROSSCUT-SAWS.
   Letters patent No. 78,653, issued June 9, 1868, (antedated May 19, 1868, to P. Donoughe, for an improvement in handles for crosscut-saws, construed and sustained.

2. SAME—NOVELTY—COMBINATION OF OLD ELEMENTS.
   The arrangement of a wooden handle for crosscut-saws, with a threaded shank entering a securing nut in such handle, and having its lower end slotted to receive the end of the saw, a ferrule inclosing the lower end of the handle to prevent abrasion of the latter by the saw, and a washer loosely secured to this ferrule, presents a patentable combination; although each of the elements of the combination was old at the date of the invention, and the combination of several of them in saw handles was also old.

3. SAME—ANTICIPATION—PRIORITY—PRESUMPTION OF, FROM PATENT.
   The rule is well settled that an anticipation, in order to defeat a patent, must be clearly made out.   A patent raises a presumption of priority which can only be overcome by clear proof.

4. SAME—ASSIGNMENT BY ADMINISTRATOR—TITLE.
   An assignment of a patent from the administrator of the patentee gives the assignee the title, unless a better title is shown in another.

On Bill, etc.

*George Harding, Francis T. Chambers,* and *George M. Reade,* for complainant.

*Bakewell & Kerr,* for respondents.

BRADLEY, Justice.   This case, though a small one, has given me a great deal of perplexity.   The patent sued on is dated June 9, 1868, and antedated May 19, 1868, upon an application which was sworn to October 3, 1865, and filed in the patent-office February 19, 1866. The drawings and model were filed at the same time, the printed copy of the file-wrapper to the contrary being a misprint.   The application was at first rejected on the second of March, 1866; but upon a very slight alteration made in the claim, it was authorized to be issued in November, 1867, and was actually issued June 9, 1868.

The patent is for an improvement in handles for crosscut-saws, invented, as alleged, by Patrick Donoughe in 1864 or 1865.   The improvement consists, as stated in the specification, in the combination and arrangement of a handle, ferrule, washer, screw-nut, and a shank furnished with an opening for the saw-blade, the whole constructed, arranged, and operating, as afterwards described, with references to the drawings.   The handle described is the ordinary upright wooden handle used on crosscut-saws.   Into this handle is inserted from below, a rod constituting the shank, provided with a screw-thread, working in a nut fixed in the interior of the handle, so that by turning the handle the rod is drawn up into it, or forced out, at will.   The lower end of this rod or shank has a long narrow slat for receiving the end

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

of the saw. When the saw is inserted in the shank, it is drawn tightly up to the handle by turning the latter in the proper direction, so as to draw the rod or shank up into the handle. To protect the handle from wear and abrasion when the saw is drawn tightly against it, its lower end is provided with an iron ferrule, and between the handle and the saw is interposed an iron washer of the size of the end of the handle, and having a hole in the center for the rod to pass through. On its upper side this washer (when the saw is drawn tightly to its place) is in contact with the ferrule; on its under side it is in contact with the back of the saw. In order to prevent the washer from dropping down out of place, away from the handle, when the saw is lowered for removal, or when the shank is lowered to receive the saw, it (the washer) has a sleeve surrounding the hole in the center, which projects upwards, inside of the ferrule, where it is turned over or flanged out, so as to rest on a projection in the ferrule. The washer is thus loosely attached to the ferrule, and cannot drop away from it, although the ferrule may turn with the motion of the handle without turning the washer. This arrangement is described in the specification as follows: "The washer is placed in the ferrule, *b,* and is set or bent down on the flange of the ferrule, as represented in Fig. 1, but arranged so that it will turn in the ferrule with ease."

One of the features of this handle is that the rod or shank does not project above the handle, nor even pass through it, the upper end of the rod being concealed in the interior of the handle, and the top of the handle having the usual smooth and rounded appearance, so as not to injure the hand of the workman.

The claim of the patent is as follows: "What I claim as my invention is the arrangement of the handle, *a,* ferrule, *b,* washer, *c,* rod, *d,* and nut, *e;* the whole being constructed, arranged, and operating substantially as herein described, and for the purpose set forth." In other words, the claim is for the whole concrete thing, with all its parts, substantially as described. This is the form of the claim, and, in view of other saw handles previously patented, described, or in use, no broader claim could well have been allowed. Each part, and the arrangement of the parts, are essential elements of the invention. The use of all but one, omitting the one, would not be an infringement of the patent.

The first question to determine, therefore, naturally is whether the defendants do use the entire handle as described in the patent, with all its parts, and their arrangement; and I think this question must be answered in the affirmative. The handles made by the defendants, and for the making of which they are prosecuted in this suit, are such as are described in letters patent granted to one Elijah R. Osgood on the eleventh of November, 1879. The answer of the defendants states that the handles made by them were and are made in accordance with said letters patent, and these letters patent were put in evidence. Besides this, specimens of the handles made by the de-

fendants have also been produced in the case as exhibits. From this evidence it appears that the handles made by the defendants consist of a wooden handle, a ferrule, a washer, a screw-nut, and a shank having a slot for the saw, all having the mutual "arrangement," and "being constructed, arranged, and operating substantially as described, and for the purpose set forth," in Donoughe's patent. The only pretense of a variance is in the mode of connecting the washer to the ferrule, the connection being by means of a flange on the outside of the ferrule, over which a flange or brackets projecting from the washer are extended, so as to make precisely the same loose connection between the ferrule and the washer as is pointed out and provided for in Donoughe's patent. The difference is only in form. There is no difference in substance. Every element of the invention claimed by Donoughe, and patented to him, is contained in the defendants' handles. I think that the infringement is clearly made out.

The question next arises whether the patent is sustainable. Was it anticipated by prior inventions? or, if not, does it contain anything new that is patentable? Construed as we have seen the patent must be, the invention patented was clearly not anticipated by that exhibited in Holtzapfel's book, nor by Neimeyer's patent, or the handles of Neimeyer exhibited in the case, or by Stephen W. Hall's handle, as described in his rejected application, nor by the old snath-nib produced in evidence. Every one of these lacks something that makes an element in Donoughe's patent. The handle exhibited in Holtzapfel had no washer between the saw and the handle, and the rod passed entirely through the handle, and was secured in its place, and tightened upon the saw, by a nut at the top of the handle. The Neimeyer handle had no washer; the rod passed entirely through the handle, secured by a nut at the top, and the handle itself was divided into two sections, which revolve independently of each other,—all different from Donoughe's. Hall's saw handles, as described in his rejected application of 1860, did, it is true, have a nut in the interior, and a rod which did not pass through the handle, but it had no ferrule around the end of the handle, resting upon a washer; but the handle fitted in a cup or hollow formed in an iron clamp or shoe, which stood upon the saw, which clamp or shoe had a crease on its under side in which the top of the saw was inserted. This was a different arrangement from Donoughe's, although it is true that the clamp or shoe was interposed between the handle and the saw, and thus protected the handle from abrasion by the saw, and in this respect performed the office of a washer, and therefore may be called a "washer," or the equivalent of one; but it was not connected with the handle except as the end of the handle rested in the hollow formed in the top of it; but it was connected with the rod in this way, namely, the lower part of the hole in the clamp in which the rod was inserted was enlarged, and made square, so as to fit on to a square enlargement of the rod immediately above the slot. This adjustment kept

the crease for the saw in line with the saw, and prevented the clamp or shoe from slipping down the rod when the saw was removed. It is unnecessary to remark upon the snath-nib, as in that the rod passed through the handle, and it had neither washer or ferrule.

While none of the handles referred to exhibit in combination all the elements of Donoughe's, they nevertheless show that nearly all of these elements had been used in other combinations. The slotted rod, or shank for holding the saw, provided with a screw-thread to work in a nut fixed in or to the handle, for the purpose of drawing the saw up tightly to the handle, and even placing the nut in the interior of the handle so that the rod should not protrude at the top,— all these things had been invented and in use before the supposed invention of Donoughe, and it cannot be pretended that a ferrule was a new thing, or that a washer in contact with a ferrule was new. The truth is that all the elements of Donoughe's invention were old, and the combination of several of them, for the very purpose of being used in saw handles, had been made before his invention was conceived. This, at least, shows how little room was left for any invention to be made.

But the defendants contend that a still nearer approach to Donoughe's saw handle, amounting to substantial identity with it, was made by Emanuel Andrews in 1861 or 1862, by adding to Hall's saw handle, which he had purchased, a ferrule to protect it from abrasion in the clamp or shoe, and connecting it with the same. The purchase was made by Andrews from Hall in 1860, and he commenced the manufacture of saw handles at Williamsport in that year. He states in his testimony that soon after he commenced manufacturing he added a ferrule to the lower part of the handle to prevent the wood from wearing in the washer. Stephen W. Hall says: "I think the plain ferrule was applied by Mr. Andrews to the lower end of the handle in 1860 or 1861, and before 1862." He says it was a cast-iron ferrule, about two inches long, and was a tapered ferrule, the end turned down a little to fit in the washer; that is, as shown by the specimens produced, it tapered down like an inverted cane, the lower end being rounded off so as to fit in the hollow of the washer. Montgomery, a mechanical engineer, who was connected with Hall, says that he left Williamsport in April, 1864, and he saw Hall handles made by Andrews with ferrules on them before that; though, on cross-examination afterwards, he says he cannot positively say that it was before 1866, but his impression is that it was at the earlier date. He says that the Hall handle, with a ferrule, is practically the same as Donoughe's; both produce the same effect in precisely the same way, and by the same device. They each have a wooden handle, ferrule, washer, rod, and nut, all arranged, constructed, and operated in the same way, and producing the same effect. He calls the clamp or shoe a "washer." Andrews afterwards invented an improvement by providing the ferrule on the outside with

notches,' or cogs, to which a thumb-screw was applied to hold the handle fast, and prevent it from turning while the saw was being operated. For this improvement Andrews applied for a patent, the application being sworn to on the nineteenth of April, 1866. A patent was granted October 9, 1866. He states that after using this improvement for some time he returned to the use of the Hall handle with a smooth ferrule, which was prevented from turning while the saw was in operation by making the thread screw on the rod left-handed instead of right-handed.

Some testimony was adduced tending to show that Andrews did not use a ferrule on the Hall handle until he made the cogged ferrule for which he got a patent; and that when he found this to be an inconvenient apparatus, he hit upon the use of the left-handed screw, and then put a long plain ferrule on the Hall handle. If this is true, of course Andrews, Hall, and Montgomery must be mistaken in their recollection, and the alleged anticipation fails. The cogged ferrule itself cannot be set up against Donoughe's patent, because, if it sufficiently resembled Donoughe's handle, there is no clear proof that it was invented by Andrews before Donoughe invented his.

The testimony referred to as tending to show that Andrews did not use a ferrule on the Hall handle until he made the cogged ferrule, is that of his brother, Joseph Andrews, Edward C. Johnston, and Charles Hall, a son of Stephen W. Hall.

Joseph Andrews was a brother of Emanuel Andrews and says he was a foreman in his brother's shop from February, 1860, until April, 1861, and again in the following winter, and from thence, with the exception of short intervals, until 1874. He says that they manufactured the Hall handle without a ferrule until the adoption of the cogged handle in the winter of 1865 or spring of 1866; that he never saw a handle with a smooth ferrule in the shop before that; that after making the cogged handle for about two years his brother adopted the long ferrule to take the place of the cog and thumb-screw, and put a left-handed thread on the rod or bolt.

E. C. Johnston was a machinist who did work for Emanuel Andrews, at sundry times from February, 1865, and had his shop part of the time in Andrews' factory. He had also been engaged with Stephen W. Hall, and knew about the saw handles that Hall and Andrews manufactured. He is equally positive with Joseph Andrews that Emanuel Andrews made no handles with ferrules on them before making the cogged ferrules in the early part of 1866. He never saw or heard of handles with smooth ferrules until after the cogged ferrules were superseded by them. The only handles he knew of Hall or Andrews making—the only ones he had ever seen before that—were the Hall handles without ferrules, and the Andrews handles with the corrugated ferrules.

The testimony of Charles Hall corroborates that of Joseph Andrews and E. C. Johnston. He worked in Andrews' shop from the

spring of 1867 to the spring of 1877. He says they were making the cog handle until they got in the new shop in 1868; after that they used the long smooth ferrules. He had never seen a smooth ferrule prior to that.

The evidence, taken altogether, is not sufficient to establish an anticipation of Donoughe's invention by Andrews. The preponderance is rather against the use of a smooth ferrule by him prior to 1868. The rule is well settled that an anticipation, in order to defeat a patent, must be clearly made out. A patent raises a presumption of priority, which can only be overcome by clear proof.

Some reference was made on the argument to the supposed part which George B. Hubbard took in making the invention. I have examined the testimony on that subject, and do not see that it materially affects the originality of Donoughe, or his title to the invention.

There may be some question whether what Donoughe did was patentable, but I am inclined to think it was. The complete handle, with all its parts and their arrangement, when it was finished, was certainly a very useful thing, and was a great improvement on former handles. As a whole, I think it showed invention, and that it was patentable.

I have examined the objections raised to the complainant's title. It does not seem to me to be well founded. The complainant has an assignment of the patent from the administrator of his father, the patentee, dated November 22, 1881. That certainly gives him the title, unless a better is shown. No better is shown. The assignment itself, it is true, states that the patent was set off to the widow of the patentee under the exemption laws; but, in the same sentence, it says that she, in her life-time, assigned it to the complainant, and the assignment itself, dated in 1872, was produced and proved. The alleged transfer by the complainant of the right for Pennsylvania to Fiske, in 1876, is met by proof of a retransfer by Fiske to the complainant in May, 1881, with an assignment and transfer of all damages, money, and right accrued in consequence of any infringement.

A decree will be entered for the complainant, with a reference to a master to ascertain the profits and damages sought by the bill, according to the prayer of the same.