### NORTH GERMAN FIRE INS. CO. v. ADAMS.

(Circuit Court of Appeals, Seventh Circuit. November 14, 1905.)

No. 1,189.

ADMIRALTY—JURISDICTION—ACTION ON POLICY OF FIRE INSURANCE.

A policy of insurance on a vessel engaged in navigation, although it insures her against fire risks alone is a maritime contract because of its subject-matter, and an action in personam to enforce payment thereon, is within the jurisdiction of a court of admiralty.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

This appeal is from a decree of the District Court, sitting in admiralty, against the appellant, North German Fire Insurance Company, for recovery of the amount insured under its fire insurance policy upon the steamer Gordon Campbell. The policy is executed in the standard form of insurance against loss or damage by fire, in favor of the Ontario Navigation Company, with a printed form attached, under the head for description of property, entitled "Standard Form—Fire Policy on Lake Vessels," insuring "on the hull of the Gordon Campbell, together with her tackle" and other equipments, and permitting navigation and other incidents of steamer service. It also contains a co-insurance clause which provides: "In case of a fire occurring at a place where repairs cannot be made, this policy shall contribute its portion of the expense of getting the vessel to the nearest port of repairs; vessel, cargo and freight each to contribute to such expense in proportion to their respective values." The libel in personam was filed by Isaac D. Adams as assignee of the policy, and the material averments of fact are undisputed—including the ownership of the steamer Gordon Campbell by the assured and the facts (1) that the steamer possessed the jurisdictional qualifications, (2) was "engaged in the business of commerce and navigation upon the Great Lakes," and (3) was damaged by fire during such engagement within the term of the policy. While error is assigned for rulings of the trial court upon the merits of the controversy, all questions thereupon are withdrawn by the appellant, and a single question is submitted for review—whether the cause stated in the libel is cognizable in the admiralty.

Thomas Bates, for appellant.
W. F. Carroll, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). This decree in admiralty rests upon a contract insuring the owners of the steamer Gordon Campbell against fire risks alone, and jurisdiction is challenged on the proposition that such contract is not maritime, but is "a personal contract of indemnity, which is made on the land and is to be performed on the land." The test of admiralty jurisdiction to enforce contract obligations was long an open question in this country under the confusion which arose from the narrow English rules, but was finally settled in the leading case of Insurance Co. v. Dunham, 11 Wall. 26, 20 L. Ed. 90. As there stated, in the unanimous opinion of the court, by Mr. Justice Bradley:

"The true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions."

So defined, jurisdiction was upheld of a libel in personam to enforce liability under a policy of marine insurance, approving "the learned and exhaustive opinion" of Mr. Justice Story, of like effect, at the circuit, in the early case of De Lovio v. Boit, 2 Gall. 398, Fed. Cas. No. 3,776. The doctrine thus formulated and applied has been reaffirmed and constantly followed (see, in this court, The Richard Winslow, 34 U. S. App. 542, 545, 71 Fed. 428, 18 C. C. A. 344, and Boutin v. Rudd, 53 U. S. App. 525,. 529, 82 Fed. 685, 27 C. C. A. 526), so that the inquiry whether the contract is maritime is not governed by the fact that insurance is a personal contract between the parties, nor

by the further fact that the contract is both made and performable on land. Since the Dunham decision all maritime contracts are recognized as within the admiralty jurisdiction, and the maritime nature of a contract depends upon its subject-matter, and not upon locality (Boutin v. Rudd, supra), nor upon the 'personal obligations of the parties.

The subject-matter of this insurance contract is not only "property that is water-borne" (vide 2 Parsons on Ship and Admir. 181, published prior to the Dunham decision), but the insurance was placed upon the steamer as one engaged in navigation upon the Great Lakes. By the terms of the policy the owners were to be insured against the risks of fire in such service. It was not in the general form of a marine insurance policy involved in Insurance Co. v. Dunham, supra, wherein the risks usually enumerated are "perils of the sea, fire, barratry, theft, piracy, capture, arrest and detentions" (1 Parsons on Marine Ins. 544), as the indemnity was limited to fire risks. So the precise question now raised, whether such fire insurance policy is a maritime contract in the jurisdictional sense, was not decided in that case; and does not appear to have arisen in any reported case which has come to our attention. The doctrine of the decision, however, and of all the cases in line with it, is equally applicable, as we believe, to bring the policy in suit within the classification of maritime contracts, of which courts of admiralty have concurrent jurisdiction, in personam, with the common-law courts. The subject-matter is alike insurance upon water-borne property against one of the risks incident to its service in navigation. It is true that loss by fire is not a risk peculiar to navigation—"not a peril of the sea, as between the shipper of goods and the shipowner"—and would not be included under such general terms in a policy. 1 Parsons on Marine Ins. 558. Nevertheless property is subject to risk from fire, on water as on land, and such risk is generally, if not universally, embraced in marine policies. The insurance contract is maritime when it has "reference to maritime service" or transactions, and the subject-matter of this policy is insurance upon a vessel in such service, and is equally within the definition, whether the insurance covers one or all of the risks of the service. In the early classification of maritime causes by Pardessus, "insurance of shop and cargo" is thus mentioned, in general terms, as one of the transactions embraced therein, namely:

"Maritime commerce being, in its nature, exposed to damages of every kind, speculators come to the aid of owners of ships and cargoes, and undertake to repair the losses which they suffer. This is the object of the contract of insurance." 1 Pard. Droit Com. 81.

The relation of the insurance contract to hull or cargo, in maritime service, not the particular terms of the policy, brings the contract within admiralty cognizance for enforcement.

The further contentions—that no lien or maritime law is involved in the controversy, "no rules of admiralty, no questions of average, nothing but the simple laws" which govern the enforcement of all personal contracts—are without force, as jurisdiction in personam does not depend upon either of these elements. Moreover, the insurer

against fire alone is liable to become involved, at least beneficially, through subrogation to the rights of the assured. (The Potomac, 105 U. S. 630, 634, 26 L. Ed. 1194; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 462, 9 Sup. Ct. 469, 32 L. Ed. 788), in general average, and other interests and questions in admiralty.

We are of opinion, therefore, that jurisdiction of the libel was rightly entertained; and, no error appearing, the decree of the District Court is affirmed.