## PACIFIC SURETY CO. v. LEATHAM & SMITH TOWING & WRECKING CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,285.

ADMIRALTY—JURISDICTION—MARITIME CONTRACTS.

 A bond given by the charterer of a vessel to secure his performance of the conditions of the charter party, which neither requires nor authorizes the surety to perform such contract in case of the default of the principal, but merely to respond in damages for its breach, is not a maritime contract, and an action thereon is not within the admiralty jurisdiction.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 162.]

Appeal from the District Court of the United States for the Northern District of the Eastern Division of Illinois.

The Pacific Surety Company, appellant, and one Samuel R. Chamberlain, were sued in admiralty by the appellee, Leatham & Smith Towing & Wrecking Company, upon a bond executed by the appellant, as surety, and Chamberlain, as principal, in favor of the appellee, conditioned upon performance by the principal of a contract for charter of the steamer Joseph L. Hurd, of even date, made between the principal and the appellee, as managing owner of the steamer. Upon the libel in personam, filed by the appellee, issue was joined, the testimony heard and recovery awarded for damages arising out of breaches of the charter party; and this appeal is from the decree accordingly. Various errors are assigned, which rest on the terms, respectively, of the bond and charter party and on the form of the decree, but the primary question is raised of want of jurisdiction of the subject-matter. No further statement, therefore, is needful beyond the contract terms and circumstances mentioned in the opinion.

Stuart G. Shepard, for appellant.
M. C. Krause, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The liability with which the appellant is charged under the decree, in conformity with the libel, rests upon its execution of a bond, as surety, with Chamberlain as principal, which states the condition of the obligation to be that:

"Chamberlain fulfills a certain contract made with the Leatham & Smith Towing & Wrecking Co. managing owners of the Steamer Jos. L. Hurd to guarantee a contract covering the charter of said steamer for a period or term commencing May 14, 1901, and ending November 30th, 1901, unless otherwise provided for, guaranteeing the paying of all bills for running expenses, wages and repairs, except as otherwise provided in the contract and release of all liens that may arise on said steamer, by reason of her employment or navigation. * * * "

The contract thus referred to—disregarding the inaccuracy of the reference, as the intention is plain—was made on the same day, chartering to Chamberlain the steamer Joseph L. Hurd, for the season, with personal covenants on the part of Chamberlain (as usual in charter parties) respecting the use, limits of navigation, keeping properly manned and equipped, payment of bills, release of liens, and redelivery in good condition at the end of the term. It recites, as considerations for the charter, that monthly payments are to be made for the use, "a satisfactory bond furnished," and the conditions mentioned to be kept and performed. Thus the inquiry of jurisdictional subject-matter is sharply presented, under the settled doctrine that cognizance of contract obligations in the admiralty is limited to contracts which are purely maritime; and its solution is not without difficulty under the various distinctions pointed out in the reported decisions.

That the charter party was a maritime contract and the undertaking of the charterer was for maritime service and transactions is unquestionable. Morewood v. Enequist, 23 How. 491, 493, 16 L. Ed. 516. The appellant, however, as surety on the bond, was no party to the maritime undertaking; neither promised performance of the charter service, nor was authorized under the contract terms to perform. Chamberlain was the sole contractor under the charter, which was neither assignable in terms, nor subject to performance of the obligations by another. The charter use and service were coupled with liabilities which made them personal and not open to performance by the appellant, if it so desired. Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 388, 8 Sup. Ct. 1308, 32 L. Ed. 246; Clark on Contracts, 524. The obligation of the appellant as surety on the bond was not for performance of the charter party, but for the payment of damages in the event of nonperformance on the part of the charterer. Unless this bond is a maritime contract, within the tests established for admiralty jurisdiction, it is plain that the libel founded thereon cannot be entertained.

The Constitution grants, as the judiciary act provides, in general terms only, for the exercise of judicial power in "all cases of admiralty and maritime jurisdiction," leaving the extent of that jurisdiction to be ascertained by the courts. For many years the limits were un-

settled, both in reference to locality and subject-matter, and the broader definitions which are now established were not recognized in the early cases in the Supreme Court, although the research of great admiralty judges in the Circuit and District Courts furnished valuable light in that direction. Ultimately, however, the Supreme Court departed from certain restrictions which appeared in these early cases, notably, in Cutler v. Rae, 7 How. 729, 730, 12 L. Ed. 890, 1221, and adopted as the jurisdictional test of contract subject-matter the nature of the contract—whether it was maritime or nonmaritime. If the undertaking is for maritime service or transactions, it is within the cognizance of admiralty; otherwise it is not. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 392, 12 L. Ed. 465; Insurance Co. v. Dunham, 11 Wall. 1, 26, 20 L. Ed. 90; The Richard Winslow, 34 U. S. App. 542, 545, 71 Fed. 428, 18 C. C. A. 344. This rule extending the limits to include all maritime contracts, instead of a specific class of such contracts, resulted from reference to and adoption of like rules of the maritime law as administered in the continental courts, as within the intention of the constitutional grant, rather than the English precedents, which had narrowed the admiralty jurisdiction, through jealous regard for the common-law jurisdiction. No relaxation was intended of the elementary rule that the limits so established must be strictly observed, and the decisions of the Supreme Court are uniform in such requirement. Without a contract purely maritime in its nature, the obligation is not enforceable in the admiralty.

The rule of strict limitation is uniformly recognized and generally applied in the admiralty courts. Instances are numerous of its application and denial of jurisdiction in reference to causes which appear to be maritime in certain aspects, but are not purely maritime in the jurisdictional sense. These examples will suffice for illustration: A mortgage of a vessel, "whether made to secure the purchase money upon the sale thereof, or to raise money for general purposes, is not a maritime contract." The J. E. Rumbell, 148 U. S. 1, 15, 13 Sup. Ct. 498, 37 L. Ed. 345, and cases cited. Neither a contract for building a vessel nor one for furnishing materials therefor is a maritime contract. Edwards v. Elliott, 21 Wall. 532, 555, 22 L. Ed. 487. The fact that the vessel is launched when materials were furnished does not make the contract therefor maritime. The William Windom (D. C.) 73 Fed. 496, and cases cited. Where the contract is maritime in part only, and adjudication of nonmaritime subject-matter is required, it is not within the jurisdiction of admiralty. Grant v. Poillon, 20 How. 162, 168, 15 L. Ed. 871; Turner v. Beacham, Taney, 583, Fed. Cas. No. 14,252. "The substance of the whole contract must be maritime," and it is insufficient that elements of that nature are involved. Mr. Justice Story, in Plummer v. Webb, 4 Mason, 388, Fed. Cas. No. 11,233. In Alberti v. The Virginia, 2 Paine, 115, Fed. Cas. No. 141, the opinion by Mr. Justice Thompson, at circuit, denies jurisdiction to enforce stipulations in a charter party, which are of a personal and not maritime nature. In The Eclipse, 135 U. S. 599, 606, 10 Sup. Ct. 873, 34 L. Ed. 269, jurisdiction is

denied to enforce an alleged contract of sale of a vessel or a trust arising therein. Andrews v. Essex F. & M. Ins. Co., 3 Mason, 6, Fed. Cas. No. 374, is an instructive case. Mr. Justice Story, who delivered the opinion, had in earlier cases upheld the jurisdiction over contracts of marine insurance, as maritime contracts (subsequently approved by the Supreme Court in Insurance Co. v. Dunham, supra), but in the case referred to denied jurisdiction over an unexecuted contract to effect such insurance—remarking that "the law looks to the proximate and not to the remote cause as the source of jurisdiction." This view, in reference to contracts to procure insurance, has been frequently reaffirmed. The City of Clarksville (D. C.) 94 Fed. 201, and cases cited.

Under the harmonious line of authorities referred to the doctrine is settled that the contract articulated in a libel must be, directly and in essence, an obligation maritime in its nature, for the performance of maritime service or transactions, to confer jurisdiction. Thus in the leading case of Insurance Co. v. Durham, supra, affirming jurisdiction over a contract of marine insurance, the maritime nature was found, not only in the origin of such contracts in the maritime law, but in the fact that "it is a contract or guaranty, on the part of the insurer, that the ship or goods shall pass safely over the sea." See North German Fire Ins. Co. v. Adams, 142 Fed. 439, 73 C. C. A. 555, recently decided by this court. Average contribution for loss suffered to save cargo or vessel "is the creation of the maritime law" (Dike v. The St. Joseph, 6 McLean, 573, Fed. Cas. No. 3,908), and lien therefor is enforceable in admiralty (Dupont de Nemours & Co. v. Vance, 19 How. 162, 171, 15 L. Ed. 584); so, when the goods are released upon the execution of a general average bond to stand in their place, the bond becomes "an express contract for maritime services" (Mr. Justice Blatchford, in Coast Wrecking Co. v. Phœnix Ins. Co. [C. C.] 13 Fed. 127, 134), and of admiralty cognizance.

The undertaking, however, under the bond in suit is not for maritime service, nor does its performance involve maritime transactions. Its sole obligation is for the payment of money arising out of a breach of the terms of the pre-existing charter party, in no sense for specific performance of such terms. True, the obligation of the surety hinges upon the breach of contract (maritime) on the part of the principal, and the charter party is thus brought in by way of evidence of the breach and of liability to respond in damages under the covenants of the bond. The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transactions; and we are of opinion that the mere fact that the event and measure of liability are referable to the charter party does not make the bond a maritime contract, nor make its obligation maritime in the jurisdictional sense. The common-law nature of the bond is unchanged. It became operative only upon failure of the charterer to perform his separate charter party agreement, as the new and separate promise of the surety, not to perform that agreement, for he is neither a party therein, nor required or authorized to carry out its terms, but to pay the damages suffered through the

nonperformance of the charterer's independent undertaking. The distinction which thus appears is well pointed out as making the separate obligation under the new promise nonmaritime, in The Centurion, 1 Ware, 479, Fed. Cas. No. 2,554. The opinion is by Judge Ware, a leading authority in admiralty law, and says:

"Although the admiralty has a general jurisdiction over maritime contracts and quasi contracts, and things done on the sea, it does not follow that the payment of a debt in every form which it may assume can be enforced in the admiralty simply because it originated in a contract, or in the performance of a service which was within the jurisdiction of the court. While the original cause or consideration subsists and is in force, the party may have his remedy in this court; but when that is extinguished, and the debt passes into a new form by what, in the civil law, is called a novation—as when the creditor receives a bond for the sum due, or a negotiable note or bill of exchange is taken as payment, and as an extinguishment of the debt—it will not be contended that the admiralty has jurisdiction to enforce the payment of the debt in its new form."

The obligation of the bond does not extinguish the debt of the principal, as in the case of novation, but the money liability is assumed in a new contract, under a new form and by a new party, and is thus equally distinguishable from the original maritime contract. Of like import are Fox v. Patton (D. C.) 27 Fed. 746 and The Harvey and Henry, 30 C. C. A. 330, 86 Fed. 656.

Thus viewing the contract of the surety, we are satisfied that it is not maritime in its nature, and not within the admiralty jurisdiction, although it appears in the case of Haller v. Fox (D. C.) 51 Fed. 298, that Judge Hanford ruled otherwise in respect of like subject-matter. The opinion referred to is entitled to great weight, and has been carefully considered, but we are constrained to the belief that it is not in harmony with the authorities.

The decree of the District Court is therefore reversed, and the cause remanded, with direction to dismiss the libel for want of jurisdiction.