## TEMPLE COLBURN v. KENYON STEEL PUMP COMPANY AND ANOTHER.[1]

May 13, 1927.

No. 25,803.

**Workman entitled to compensation for hernia.**
> Evidence clearly demonstrates that the strain which plaintiff was subjected to in removing a chuck, in the course of his employment, was the exciting and immediate cause of the rupture complained of, and that plaintiff is entitled to compensation for the disability resulting therefrom.

Evidence, 22 C. J. p. 732 n. 95 New.
Workmen's Compensation Acts—C. J. p. 115 n. 37.

---

See note in 20 A. L. R. 48.

Certiorari upon the relation of the plaintiff to review an order of the industrial commission denying compensation in a proceeding under the workmen's compensation act. Remanded with directions.

*Trafford N. Jayne,* for relator.

*C. E. Warner, Mark F. Crotty,* and *G. A. Brugger,* for respondents.

QUINN, J.

Certiorari to review the record and order of the industrial commission disallowing compensation to Temple Colburn, designated as plaintiff, under the workmen's compensation act for alleged personal injury claimed to have been sustained by him on December 14, 1925,

[1]Reported in 214 N. W. 29.

while in the employ of the Kenyon Steel Pump Company, as a machinist, at a weekly wage of $32.20.

Plaintiff had been working at a lathe machine during the morning, grinding bushings. At about ten o'clock he undertook the removal of the chuck, a steel device attached to a spindle on the machine for holding work in place. This chuck weighed approximately 75 pounds. He took hold of the chuck with his hands and arms. It caught somehow. He gave a little jerk and then placed the device upon the floor. As he straightened up, he felt something go wrong in his left groin. He mentioned it to his foreman. Pains shot through his body and grew worse during the afternoon. He quit work and went home at about five o'clock. On the street car, he became sick, the jar of the car hurt him. When he got home and examined himself, he found a lump about the size of a hazelnut on his groin. He called Dr. Hall, then went to bed without any supper. The pains continued and he grew sick at his stomach. The doctor came, examined him, found a soft mass on the left groin about the size of a walnut, which he attempted to reduce, force back into place, but failed in so doing. He then directed a massage and the application of camphor oil during the night. He advised absolute rest in bed, returned on the morning of the 16th, found the protrusion slightly larger and much harder, attempted to reduce it but could not do so. He then called Dr. Green, who responded, and the two doctors examined the patient and advised an operation. The patient went to the hospital and the two doctors operated on him that evening.

Dr. Hall was called by the plaintiff as a witness. His qualification as a physician and surgeon was admitted. He testified as to the history of the case, also that he examined the patient on the evening of the 14th and again in company with Dr. Green on the 16th; that the patient had a small mass, about the size of a walnut, fairly soft on the 14th, tender to pressure and not particularly reducible; that he directed the patient to stay in bed and apply hot towels and keep absolutely quiet, eat lightly and wait developments; that on the 16th the mass had become slightly larger, much harder, more tender and could not be reduced; that he told the patient that

he had a rupture; that it could not be reduced; that operation was necessary, and that he would like to have someone else see it and that Dr. Green was then called; that Dr. Green arrived at about noon, an examination was had and it was decided that the patient had a strangulated hernia and that an operation was necessary.

The doctor further testified that, in getting down into the sac, instead of finding intestine, there was a wall of bladder found strangulated in this hernia sac which had become somewhat gangrenous so that it was resected and the bladder wall sewed up, and the ring partly obliterated in such a way as to overcome the hernial condition; that he considered it a direct hernia, in a rather unusual condition, but that it was directly in the ring; that on account of the gangrenous condition it was a little difficult to dissect and free from the bladder wall although he thought that there was a definite sac and, in his opinion, the hernia was a direct result of the lifting mentioned, because that kind of a hernia naturally could not exist for any length of time and not disable a man almost right from the start.

Dr. Green was called by plaintiff. His qualification as a physician and surgeon was conceded. He testified as to the history of the case and that he performed the operation and found conditions as related by Dr. Hall. He testified that they found a very unusual condition; that the bladder had been forced down into the inguinal ring; that the tumor mass was about the size of a walnut, gangrenous and black so that circulation did not restore itself which, when removed, was found to be the bladder; that, considering the history of the case and the physical finding, there was, in his opinion, a causal connection between the alleged accident and the hernia; that there was no free blood but there was a gangrenous condition of the tissues.

Dr. Bockman was called by defendant and examined as an expert witness. He testified, in answer to a hypothetical question, in direct opposition to the testimony of doctors Hall and Green. His answer to such question covers several pages of closely printed matter, based largely upon the weight of the chuck, his experience in lifting similar chucks and having seen it done many times, the

method generally used by others in lifting chucks, and the fact that he had never seen a traumatic hernia from internal strain, pressure or injury. Following this course of reasoning in connection with the history of the instant case, the witness gave it as his opinion that there was no evidence that the plaintiff had a strangulated hernia or that his trouble was caused by the lifting of the chuck. It was largely upon the testimony of Dr. Bockman that the commission based its decision and refused plaintiff compensation.

It is a general rule of evidence that, where witnesses of proper skill and experience have formed their judgment from a personal examination of the subject of the controversy, their opinions are generally more worthy of confidence than those elicited by hypothetical questions which may or may not state all circumstances necessary to form a correct conclusion. Morewood v. Enequist, 23 How. 491, 16 L. ed. 516; 11 R. C. L. 578. The plaintiff's theory of the cause of his trouble is supported by the testimony of both Dr. Hall and Dr. Green, whose capacity and experience are conceded, and each of whom formed his judgment from a personal examination of the plaintiff, while that of the expert called by the defendant is based upon a hypothetical question which clearly fails to state all of the circumstances and from circumstances entirely outside of the record. The opinion of such expert fails to coincide with the provisions of the workmen's compensation act as construed by this court.

We are of the opinion that the evidence clearly demonstrates that the strain to which the plaintiff was subjected in removing the chuck was the exciting and immediate cause of the rupture complained of, and that plaintiff is entitled to compensation for the disability resulting therefrom. Zobitz v. Oliver I. Min. Co. 167 Minn. 424, 209 N. W. 313, and cases there cited.

The proceeding is remanded with directions to award to the plaintiff the compensation allowed by the statute for such disability as he sustained. An attorney's fee of $100 is allowed to plaintiff.

Remanded.

STONE, J. (dissenting).

I dissent solely because, to me, the record seems to present a question of fact with respect to which the finding of the industrial commission is final.