Williams, Judge,
delivered the opinion of the court:
In August 1920 the United States was the owner of the steamships Morado and Diana, merchant vessels. The vessels were then being operated by the United States Shipping Board Emergency Fleet Corporation through its agents, the Clinchfield Navigation Company. This company, on August 12, 1920, chartered to the Southern Export Company the steamship Morado or substitute for carriage of a cargo of yellow-pine lumber from Jacksonville, Florida, to certain ports in Cuba.
On August 18, 1920, the Southern Export Company sub-chartered the vessel to the plaintiff to carry the same amount of lumber from the same destination and to the same ports at a slightly increased rate of freight. The steamer Diana was substituted for the Morado and subsequently received the cargo of lumber at Jacksonville and discharged the same at ports of Cuba in accordance with the terms of the respective charter parties. Upon loading the lumber at Jacksonville the master of the Diana issued two bills of lading for the cargo to the plaintiff and the cargo was consigned for *5 delivery to order of Cia De Maderas Las Antillas, Inc., “ or in their absence of their assigns, they paying freight for the said goods with all other conditions per charter party, all conditions at port of loading fulfilled.”
The charter contract provided that the vessel should have a lien upon the cargo for all freight, dead freight, demur-rage, detention, storage, and for all and every other sum or sums of money which might become due the vessel under the contract, and that the vessel might retain possession of the cargo until the said charges were paid. The contract also provided for the payment of demurrage for delays in either loading or discharging the cargo.
Loading of the vessel at Jacksonville was delayed 6 days 18 hours and 24 minutes in excess of the lay time allowed under the terms of the charter party. Demurrage in the sum of $5,319.93 was incurred because of this delay. The plaintiff, under protest and in order to receive clean bills of lading without the indorsement of the said demurrage thereon offered to pay and did pay demurrage in the amount of $4,511.16. Upon the payment of this sum the master of the vessel issued to the plaintiff clean bills of lading. By the issuance of a clean bill of lading the right of the defendant to a lien upon the cargo of the vessel for whatever demur-rage was incurred at the port of loading was relinquished.
Part of the cargo of lumber carried by the Diana was discharged at the port of Antilla, Cuba. There was a delay of 2 days 20 hours and 52 minutes in discharging the cargo at that port in excess of the lay time allowed under the terms of the charter party. Demurrage in the amount of $2,253.86 was incurred by this delay. The remainder of the cargo was discharged at the port of Nuevitas, Cuba, at which port there was a further delay in discharging the cargo of 8 days 18 hours and 44 minutes in excess of the lay time allowed in the charter agreement. Under the terms of the charter party demurrage on account of this delay accrued to the defendant in the sum of $7,202.86, making a total demurrage charge of $9,456.72 on account of the delays in discharging the cargo at the aforesaid ports. Payment of the demurrage was demanded from the Cia De Maderas Las Antillas, Inc., to whom the cargo was delivered, *6 but was refused by that company. Whereupon plaintiff, who had received the assets and assumed the obligations of the Cia De Maderas Las Antillas, Inc., agreed to pay the demurrage and the defendant’s lien upon the cargo for the demurrage was thereby relinquished. The plaintiff has failed to pay the demurrage.
Plaintiff seeks to recover $4,511.76, the amount of demur-rage paid by it to the defendant, on account of the delay in loading the vessel at Jacksonville.
The defendant has filed a counterclaim for $9,456.72 for demurrage incurred by the delays in unloading the cargo at the ports of Antilla and Nuevitas, Cuba.
Consideration of plaintiff’s claim upon the merits would require the court to determine, first, whether demurrage for the delay in loading the cargo was properly exacted by the defendant; and, second, whether or not the plaintiff was liable to the defendant for such demurrage.
The question as to whether demurrage may be or may not be exacted in any given case because of delay in loading a vessel is essentially and purely maritime in its nature and falls within the admiralty jurisdiction. Exclusive jurisdiction of maritime causes of action growing out of the operation of merchant vessels of the United States is vested in the district courts under the provision of the Suits in Admiralty Act of March 9, 1920, c. 95, 41 Stat. 525. Matson Navigation Co. v. United States, 284 U.S. 352; Johnson v. U.S. Shipping Board Emergency Fleet Corporation, 280 U.S. 320; U.S. Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. & Co., 276 U.S. 202. It is admitted that a claim for demurrage can only be asserted in a proceeding in admiralty but it is contended that a suit to recover back money paid as demurrage is of a common law nature and cannot be maintained in an admiralty court under the Suits in Admiralty Act. It is urged that a suit to recover back money paid as demurrage is similar in character to a suit brought on a bond, conditioned for fulfillment of the terms of a charter party by charterers of a vessel, which is held not to be within the admiralty jurisdiction. Pacific Surety Co. v. Leatham & Smith, T. & W. *7 Co., 151 Fed. 440 (C.C.A. 7th). The Pacific Surety Co. case, supra, is clearly distinguishable from the case at bar. The court in that case particularly pointed out that the direct subject matter of the suit was the covenant to pay damages arising out of the breach of the terms of a preexisting charter party. It was held that, while the measure of liability under the bond was referable to the charter party, that fact did not make the bond a maritime contract, nor make its obligations maritime in the jurisdictional sense. In the instant case the plaintiff’s liability, or the nonliability, as the case may be, for the demurrage in question, must be determined solely upon the provisions and conditions of the charter agreement, admittedly a maritime contract. In other words, before it may be held that the plaintiff is entitled to recover, it must be determined that the plaintiff was not liable for the demurrage exacted from and paid by it. The plaintiff, when the demurrage was demanded, had a right to contest its liability for payment of the same, either on the ground that the amount demanded was excessive or that the defendant was entitled to no demurrage whatever, as it now contends; or that the original charterer, the Southern Export Company, was liable to the defendant for whatever demurrage was legally exactable, as is alleged in the petition. Under the authorities cited the plaintiff’s liability for the demurrage could then have been litigated only in the United States District Courts. This court was then, and is now without jurisdiction to adjudicate that question. The cause of action— the payment of the demurrage by plaintiff — arises out of the operation of a merchant vessel of the United States, and is not cognizable before this court. Samuel Sanday & Co. v. United States, C-712, decided November 14, 1932, 76 C.Cls. 370. This, of course, is also true as to the Government’s counterclaim.
The petition is dismissed. It is so ordered.
Whaley, Judge; LittletoN, Judge; and Geeen, Judge, concur.
Booth, GMef Justice, took no part in the decision of this case on account of illness.