**FEDNAV, LTD., Plaintiff–Appellant,**

v.

**ISORAMAR, S.A., Defendant–Appellee.**

No. 561, Docket 90–7592.

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1990.

Decided Feb. 12, 1991.

Christopher H. Mansuy, New York City (Walker & Corsa, New York City, of counsel), for plaintiff-appellant.

Kenneth Geller, New York City (Hill, Betts & Nash, New York City, of counsel), for defendant-appellee.

Before FEINBERG, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff–appellant Fednav, Ltd. ("Fednav") appeals from a judgment entered in the United States District Court for the Southern District of New York (Broderick, J.) dismissing its complaint against defendant-appellee Isoramar, S.A. ("Isoramar") for lack of subject matter jurisdiction. The district court found that Isoramar's agreement to contribute to the settlement of a cargo claim was not a maritime contract permitting invocation of the court's admiralty jurisdiction.

On appeal, Fednav asserts that we must look to the subject matter of the original contract in deciding whether the Fednav–Isoramar contribution agreement is a maritime contract. Fednav argues that the settlement agreement of the cargo dispute is a maritime contract and disputes relating to that settlement are sufficiently connected to the underlying maritime action to fall within admiralty jurisdiction. However, Isoramar never was a party to the admiralty action involving the cargo dispute or to its settlement. Because the contribution agreement is a contract separate and distinct from the cargo settlement agreement, which neither involves maritime services nor maritime transactions, and because contribution was not sought in the admiralty action, we find that the district court properly dismissed the action for lack of subject matter jurisdiction. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

The parties stipulated to the following facts. Fednav is a corporation organized and existing under the laws of Canada, and Isoramar is a Panamanian corporation and registered owner of the vessel M/V LADYLIKE ("LADYLIKE"). Fednav leased LADYLIKE from Isoramar to carry steel products from Hamburg, West Germany to Chicago, Illinois under a time charter. It appears that the cargo was damaged en route from Hamburg to Chicago. After delivery of the cargo to Chicago in December 1984, Transatlantic Marine Claims Agency, Inc. ("Transatlantic"), as assignee of Assicurazioni Generali S.p.A., the subrogated marine underwriter, sued Fednav and LADYLIKE *in rem* in the United States District Court for the Southern District of New York to recover for damages to the steel products in the amount of $55,125.80. The action was transferred by order of the court to a more convenient forum, the United States District Court for the Northern District of Illinois. Thereafter, Transatlantic and Fednav negotiated a $5,000 settlement of the cargo claim.

On January 30, 1987, Fednav requested contribution from Isoramar, as owner of LADYLIKE, of fifty percent of the principal amount of the $5,000 settlement, plus fifty percent of the legal fees incurred by Fednav in defending the cargo action. Fednav alleges that Isoramar, through its representatives, agreed to contribute fifty percent of the settlement and fifty percent of Fednav's legal fees. On April 2, 1987, Fednav paid Transatlantic the $5,000 settlement amount and paid its own attorneys fees in the sum of $4,295. On April 9, 1987, Fednav forwarded to a representative of Isoramar a copy of Transatlantic's release and a copy of Fednav's attorneys' fee statement. Fednav requested the payment of $4,647.50, representing Isoramar's contribution to the settlement of the cargo claim and the payment of attorneys' fees. In an April 16, 1987 letter to Fednav, a representative of Isoramar confirmed that all the relevant documents were received. Isoramar never paid fifty percent of the settlement amount and denied having entered into an agreement to contribute.

On October 26, 1987, Fednav filed a verified complaint in the United States District Court for the Southern District of New York for recovery of one-half of sums paid out in the Fednav–Transatlantic settlement. Fednav alleged that Isoramar had breached its agreement to contribute to the Fednav–Transatlantic settlement. Fednav also applied pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure for a writ of maritime attachment and garnishment, because Isoramar was not amenable to service of process. A writ of maritime attachment and garnishment was served upon Marine Midland Bank, N.A. ("Marine Midland"), where Isoramar maintained an account. Marine Midland answered that it was holding $9,295.00 in Isoramar's bank account.

On January 23, 1990, Judge Broderick dismissed the action for want of subject matter jurisdiction and vacated the maritime attachment and garnishment served upon Marine Midland. The court found that "[w]hile the cargo claim may have sounded in admiralty, the alleged agreement by defendant to contribute to plaintiff's settlement of that claim sounded in contract, but not in admiralty." Fednav filed a timely notice of appeal, and this Court stayed the district court's vacatur of the writ of maritime attachment and garnishment to Marine Midland.

## DISCUSSION

"The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 889–90, 6 L.Ed.2d 56 (1961). We have recognized that "[i]f the subject matter of the contract ' "relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment" ' it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 302 (2d Cir.1987) (quoting *CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir. 1982) (quoting 1 *Benedict on Admiralty* § 183, at 11–6 (7th ed.1981))), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *see North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 222–23, 63 L.Ed. 510 (1919) ("[I]n matter[s] of contract it depends upon the subject-matter [of the contract], ... [;] the true criterion being the nature of the contract, as to whether it [has] reference to maritime service or maritime transactions."). We also look to precedent to determine whether a particular agreement may be classified as a maritime contract. *Kossick*, 365 U.S. at 735, 81 S.Ct. at 889–90; *CTI–Container Leasing Corp.*, 682 F.2d at 380.

Comparing the contribution agreement with other maritime and nonmaritime contracts, we find that Isoramar's agreement to contribute to the settlement of the charter claim is not a maritime contract. It is well-established that a charter party agreement is a maritime contract. *Armour & Co. v. Fort Morgan S.S. Co.*, 270 U.S. 253, 259, 46 S.Ct. 212, 214, 70 L.Ed. 571 (1926); *Morewood v. Enequist*, 64 U.S. (23 How.) 491, 493–94, 16 L.Ed. 516 (1860); *CTI–Container Leasing Corp.*, 682 F.2d at 380 n. 4. However, merely agreeing as surety "to pay damages for another's breach of a maritime charter is not" a maritime contract. *Kossick*, 365 U.S. at 735, 81 S.Ct. at 889–90 (citing *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440 (7th Cir.1907)). The reason for this rule is clear: "The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transactions; and ... the mere fact that the event and measure of liability are referable to the charter party does not make the [agreement to pay] a maritime contract, nor make its obligation maritime in the jurisdictional sense." *Pacific Surety*, 151 F. at 443.

Likewise, we believe that the agreement by Isoramar to contribute to a settlement agreement arising out of a breach of a time charter contract is not a maritime contract. *See Kossick*, 365 U.S. at 735, 81 S.Ct. at 889–90; *Pacific Surety*, 151 F. at 443. The subject-matter of the Fednav–Isoramar agreement is Isoramar's promise to contribute to the settlement of the cargo dispute. The Fednav–Isoramar contribution agreement is a separate and distinct con-

tract that is not maritime in nature because it involves neither maritime services nor maritime transactions. *See Kossick,* 365 U.S. at 735, 81 S.Ct. at 889–90; *Pacific Surety,* 151 F. at 444 ("the money liability is assumed in a new contract, under a new form and by a new party, and is thus equally distinguishable from the original maritime contract"); *see also Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson,* 645 F.Supp. 884, 886 (S.D.Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim."); *Mulvaney v. Dalzell Towing Co.,* 90 F.Supp. 259, 260 (S.D.N.Y. 1950) ("If this is an action for breach of contract to compromise and settle, it is not within the admiralty jurisdiction.").

Nor are we persuaded by Fednav's contention that we should look to the subject matter of the original contract in deciding whether the Fednav–Isoramar contribution agreement is a maritime contract. Fednav argues that because the agreement settling the cargo dispute is a maritime contract and any claims arising out of that settlement could be adjudicated in the same action, the contribution agreement in this action likewise falls within the district court's admiralty jurisdiction. *See Siderius, Inc. v. M.V. Amilla,* 880 F.2d 662, 667 (2d Cir. 1989) (equitable apportionment of liability between charterer and vessel owner adjudicated in cargo owner's claim against vessel owner and charterer).

Although we have noted the "sound policy of permitting claims arising in the admiralty or maritime context to be resolved in a single setting," *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1296 (2d Cir.1990), Isoramar never was a party to the cargo action or to the Fednav–Transatlantic settlement of the action. *See Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 863 (2d Cir.1985); *Merchants Nat'l Bank v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1345 (5th Cir. Unit A Dec.1981). Isoramar's contri-

bution agreement with Fednav is collateral to the Fednav–Transatlantic settlement agreement and "cannot serve as the basis for initiating an [independent] action in admiralty for specific performance." *Pedersen v. M/V Ocean Leader,* 578 F.Supp. 1534, 1535 (W.D.Wash.1984).

In *Pedersen,* the court recognized that an admiralty court has the equitable power to enforce a partially consummated settlement of a maritime action. *Id.* There, the parties had settled a maritime action to recover damages arising from the collision of two vessels. The settlement was only partially consummated, and the plaintiff sought entry of judgment in the amount of the unpaid balance due. The court held that "when a plaintiff properly invokes the admiralty jurisdiction and the parties subsequently agree to compromise their differences, the admiralty court should not abandon the parties by refusing to enforce such a compromise disposition." *Id.* Here, admiralty jurisdiction never was properly invoked because Isoramar was not a party to the underlying maritime action.

Because of the absence of diversity jurisdiction, *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 491–92, 103 S.Ct. 1962, 1970–71, 76 L.Ed.2d 81 (1983) (no diversity jurisdiction where both parties to the action are foreign), or any other basis upon which the court may exercise jurisdiction, we find that the district court properly dismissed the case for lack of subject matter jurisdiction.

## CONCLUSION

The judgment of the district court is affirmed and our stay of the district court's vacatur of the writ of maritime attachment and garnishment to Marine Midland is vacated.