# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: September 21, 2012          Decided: June 12, 2014)

Docket No. 11-3473-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

D'AMICO DRY LIMITED,
        *Plaintiff-Appellant*,

v.

PRIMERA MARITIME (HELLAS) LIMITED, AKA PRIMERA MARITIME
LIMITED, SONIC FINANCE INC., MIRAGE FINANCE INC., NIKKA FINANCE
INC., HANDY FINANCE INC., PASHA FINANCE INC., MOVIDA FINANCE
INC., ELEMENT FINANCE INC., CALDERA MARINE CO. LTD., ADALIA
MARINE CO. LTD., SEASATIN NAVIGATION INC., ANNAMAR
NAVIGATION INC., SEASAFE NAVIGATION INC., CHEMNAV INC., PAUL
CORONIS, NIKOLAOS CORONIS, AKA NICHOLAS CORONIS, PRIMEBULK
SHIPMANAGEMENT LTD., PRIMERA OCEAN SERVICES S.A., BULKNAV
INC., J.P.C. INVESTMENTS S.A., AKA JPC INVESTMENTS S.A., CHEMNAV
SHIPMANAGEMENT LTD.,
        *Defendant-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**11-3473-cv**
**D'Amico Dry Limited v. Primera Maritime, et al.**

Before:     KATZMANN, *Chief Judge*, LEVAL, CABRANES, *Circuit Judges*.

Plaintiff appeals from the judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*) dismissing for lack of subject matter jurisdiction the suit to enforce an English court's judgment on a derivative contract for future ocean freight rates. The district court concluded that the suit did not come within federal admiralty jurisdiction, 28 U.S.C. § 1333, because the English judgment was not rendered in an English admiralty court and the claim was not maritime under English law. The district court rejected the plaintiff's argument that the maritime character of the underlying claim should be appraised under U.S. law. The Court of Appeals (Leval, *J.*) concludes that federal courts have jurisdiction under 28 U.S.C. § 1333 to enforce a judgment of a foreign non-admiralty court if the claim underlying that judgment is maritime under the standards of U.S. law. The judgment of the district court is **VACATED**, and the case is **REMANDED** for further proceedings.

For Plaintiff-Appellant:     THOMAS L. TISDALE (Lauren C. Davies, *on the brief*), Tisdale Law Offices, LLC, New York, NY.

For Defendant-Appellee Primera Maritime: ALAN HEBLACK, (Samuel Spital, *on the brief*), Squire Sanders (US) LLP, New York, NY.

For other Defendant-Appellees:     GEORGE M. CHALOS (Katherine N. Christodoulatos, *on the brief*), Chalos & Co P.C. International Law Firm, Oyster Bay, NY.

**11-3473-cv**
**D'Amico Dry Limited v. Primera Maritime, et al.**

Leval, *Circuit Judge*:

Plaintiff D'Amico Dry Limited ("D'Amico") appeals from the judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*) dismissing its complaint for lack of subject matter jurisdiction. D'Amico brought this suit to enforce an English court's judgment on a forward freight agreement ("FFA") between D'Amico and Defendant Primera Maritime (Hellas) Limited ("Primera").[1] Under this contract, Primera was obligated to pay D'Amico if the market freight rates for a specified shipping route on agreed future dates were lower than the price specified in the contract. At the agreed future dates, the rates were indeed lower, which obligated Primera to pay D'Amico. Primera refused to pay. D'Amico sued Primera in an English court, which ruled for D'Amico, rendering judgment in its favor. The suit was heard in the commercial division, not the admiralty division, of the English court.

D'Amico then brought this suit in the United States district court to enforce the English judgment, asserting entitlement to federal jurisdiction under 28 U.S.C.

---

[1] The remaining Defendants are alleged to be alter egos of Primera.

3

§ 1333, which provides the maritime jurisdiction of the federal courts. Primera moved to dismiss for lack of subject matter jurisdiction. The district court granted Primera's motion to dismiss, holding that the suit did not fall under the federal courts' admiralty jurisdiction because the English judgment was not rendered by an admiralty court and the claim underlying the judgment was not deemed to be maritime under English law.

D'Amico moved for reconsideration, arguing that enforcement of the English judgment lies within the federal court's admiralty jurisdiction because the claim on which the judgment was rendered would have come within federal admiralty jurisdiction if brought in the United States courts. The district court rejected the contention that the maritime classification of the claim under U.S. law is pertinent to the question whether the suit may be brought in the admiralty jurisdiction of the federal courts. The court therefore denied D'Amico's motion for relief from the judgment. D'Amico now appeals from the denial of the Rule 60(b) motion, as well as from the judgment dismissing the complaint.

We conclude that, under § 1333, United States courts have jurisdiction to enforce a judgment of a foreign non-admiralty court if the claim underlying that

judgment would be deemed maritime under the standards of U.S. law. We therefore vacate the judgment and remand.

# BACKGROUND

**A.      The Forward Freight Agreement**

D'Amico operates Panamax dry bulk cargo vessels, among others, in the business of carriage of goods by sea. A major risk of an ocean carrier's business is that a slowdown in worldwide commercial activity will lead to diminution in shipments of cargo, causing vessels to make expensive voyages partially empty or, in more extreme circumstances, to lay idle. The rates carriers charge for carriage of goods fall during such slowdowns. The cost of maintaining one of D'Amico's Panamax dry bulk cargo vessels in an unemployed, idle state is roughly $12,000 per day on average. As a way of offsetting losses from its vessels being underemployed or idle during such a slowdown, D'Amico enters into futures contracts on international shipping rates. These contracts, sometimes called "forward freight agreements" or "FFAs," specify a base rate (the "contract rate") for a hypothetical shipment of specified goods over specified routes and future dates for comparison of the contract rate with the market rates on such

future dates. If on a specified future date the market rate is above the contract rate, then the party that took the downside of the agreement must pay the other party the difference. If on the future date the market rate is below the contract rate, the party that took the upside of the contract must pay the other party the difference. Profits realized from such contracts as rates fall will increase D'Amico's revenues when demand is low, counteracting its losses from underemployment. Conversely, the losses on such contracts will decrease D'Amico's net revenues when demand is high and rates rise.

At the beginning of September 2008, Luciano Bonaso, D'Amico's Chief Executive Officer, ascertained that for the first quarter of 2009, 280 vessel days remained unchartered. Believing, based on market projections, that D'Amico would be unable to book cargo filling those days, Bonaso decided that D'Amico should hedge against the underemployment by entering into an FFA, taking the downside. On September 2, 2008, through the service of broker IFCHOR, S.A., D'Amico entered into an FFA with Primera, taking the downside of freight rates for forty-five Panamax vessel days over four "Baltic Exchange" charter routes. The FFA used a contract rate of $55,750 per day to be compared to market rates

for the Baltic Panamax Index ("BPI"), as published by the Baltic Exchange, at specified dates during the first quarter of 2009. Under the FFA contract, Primera was to pay D'Amico if the market rates published in the BPI for the later dates were below the contract rate, and D'Amico to pay Primera if the market rates on the later dates were higher. The FFA provided that all disputes arising under it would be submitted to the English High Court of Justice. By early 2009, as D'Amico had predicted, the market rate had declined significantly, so that Primera was obligated by the FFA to pay the difference. On January 30, 2009, D'Amico invoiced Primera for $795,963.20 under the terms of the FFA. Primera failed to pay.

**B.     The Prior Proceedings**

D'Amico brought suit in England at the High Court of Justice, Queen's Bench Division, to enforce the agreement. The Queen's Bench Division of the High Court of Justice is subdivided into multiple divisions, including the Admiralty Court and the Commercial Court. The case was heard by the Commercial Court, and not the Admiralty Court. The English court entered a judgment in D'Amico's favor in the amount of $1,766,278.54, including, in

addition to D'Amico's contract entitlement, interest and other components.

Primera did not pay the judgment.

It appears that FFAs are not considered to be maritime contracts under English law because they involve a theoretical, rather than an actual shipment of goods by sea. *See* Senior Courts Act, 1981, c. 54 § 20(2)(h) (vesting English courts with admiralty jurisdiction over "any claim arising out of any agreement relating to the carriage of goods in a ship or to the use or hire of a ship"); *The Sandrina*, [1985] A.C. 255 (H.L.) 271 (appeal taken from Scot.) (interpreting the phrase "arising out of" in the identically worded Scottish equivalent of § 20(2)(h) to require a "reasonably direct connection" with the carriage of goods or hire of a ship, and holding that a claim on a shipping insurance contract did not qualify); *The "Lloyd Pacifico"*, [1995] 1 Lloyd's Rep. 54 (Q.B.) 57 (holding that for admiralty jurisdiction to apply, a claim must relate to an identifiable ship).

D'Amico then brought this action in the U.S. district court to enforce the English judgment, asserting federal subject matter jurisdiction under § 1333. That statute gives the federal district courts exclusive jurisdiction to hear "[a]ny civil case of admiralty or maritime jurisdiction." Primera moved to dismiss for lack of

subject matter jurisdiction. The district court granted Primera's motion to dismiss, concluding that it lacked admiralty jurisdiction to enforce the English court's judgment because the English judgment was not rendered by an admiralty court and the claim underlying the judgment was not deemed maritime in English law. D'Amico then moved for reconsideration pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, arguing that a suit to enforce a foreign judgment falls under federal admiralty jurisdiction if the underlying claim would be maritime under U.S. law, irrespective of whether the foreign court that entered the judgment was sitting in admiralty. The district court rejected this argument and denied D'Amico's motion for reconsideration. D'Amico now appeals from both the judgment of dismissal and the denial of the post-judgment motion.

## DISCUSSION[2]

The federal admiralty jurisdiction is as old as the federal courts themselves.

Article III section 2 of the U.S. Constitution provides that "[t]he judicial Power

shall extend . . . to all Cases of admiralty and maritime Jurisdiction . . . ."

Congress first gave effect to this constitutional grant of jurisdiction in the

Judiciary Act of 1789, which provided:

> That the district courts shall have . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from sea by vessels of ten or more tons of burthen, within their respective districts as well as upon the high seas; saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it . . . .

Judiciary Act of 1789, § 9, Ch. 20, 1 Stat. 73, 76-77. The jurisdictional statute now

provides that "[t]he district courts shall have original jurisdiction, exclusive of the

---

[2] Whether a suit falls within federal subject matter jurisdiction is a question of law, which is reviewed de novo. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). A district court's denial of a motion for reconsideration is generally reviewed for abuse of discretion. *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011).

courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.

It is well established that the law governing federal jurisdiction under § 1333 to enforce admiralty judgments of foreign courts differs substantially from the law governing jurisdiction to enforce judgments rendered by federal courts exercising federal question jurisdiction under 28 U.S.C. § 1331. A suit to enforce a judgment rendered by a federal court exercising federal question jurisdiction may not be brought in federal court unless the enforcement suit has a basis of federal jurisdiction independent of the fact that the original suit was on a federal question. *See Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) ("[A] suit on a judgment [rendered by a federal court exercising federal question jurisdiction] does not involve a federal question, however important federal questions may have been to the resolution of the original controversy."). In contrast, some judgments of foreign admiralty courts are enforceable in the admiralty or maritime jurisdiction of the United States courts. *See Penhallow v. Doane's Adm'rs*, 3 U.S. (3 Dall.) 54, 97 (1795) (opinion of Iredell, *J.*); *Victrix S.S. Co. v. Salen Dry Cargo*

11

*A.B.*, 825 F.2d 709, 713 (2d Cir. 1987); *Int'l Sea Food Ltd. v. M/V Campeche*, 566 F.2d 482 (5th Cir. 1978).

The rule providing federal admiralty jurisdiction for suits to enforce judgments of foreign admiralty courts has been recognized since the birth of the Nation. In *Penhallow v. Doane's Administrators*, 3 U.S. (3 Dall.) 54 (1795), Supreme Court Justice Iredell declared that "a Court of Admiralty in one nation, can carry into effect the determination of the Court of Admiralty of another." *Id.* at 97. Justice Cushing wrote separately that it "seems to be settled law and usage" that "courts of Admiralty can carry into execution decrees of foreign Admiralties." *Id.* at 118. This principle has been reaffirmed many times in the subsequent decades. *See Hilton v. Guyot*, 159 U.S. 113, 186 (1895) ("The respect which is due to judgments, sentences, and decrees of courts in a foreign state, by the law of nations, seems to be the same which is due to those of our own courts. Hence the decree of an admiralty court abroad is equally conclusive with decrees of our admiralty courts. Indeed, both courts proceed by the same rule, are governed by the same law — the maritime law of nations, which is the universal law of nations, except where treaties alter it." (citation and internal quotation marks omitted));

*Int'l Sea Food*, 566 F.2d at 484 (affirming "the existence of a general principle that admiralty courts of this nation are empowered to carry into effect the maritime decrees of foreign admiralty courts"); *Penn. R.R. Co. v. Gilhooley*, 9 F. 618, 619 (E.D. Pa. 1881) (stating, in the context of an action to enforce a judgment of another district court, that the court "had a general jurisdiction which would enable it in its discretion to enforce the decree of a foreign admiralty court"); *Otis v. The Rio Grande*, 18 F. Cas. 902, 903 (C.C.D. La. 1872) (No. 10,613) ("This court is in duty bound to carry into effect the sentences and decrees, not only of other federal courts, but even of the admiralty courts of foreign countries . . . ."), *aff'd*, 90 U.S. 458 (1874); *The Jerusalem*, 13 F. Cas. 559, 563 (C.C.D. Mass. 1814) (Story, *J.*) (No. 7,293) (stating in dicta that an admiralty court "will enforce a foreign maritime judgment between foreigners, where either the property or the person is within its jurisdiction").

**A.  Admiralty Jurisdiction Extends to Suits to Enforce Foreign Judgments on Maritime *Claims*, Even if Those Judgments Were Not Rendered by Specialized Admiralty *Courts*.**

In addition to the narrowest conception of the *Penhallow* rule opening the federal admiralty jurisdiction to suits to enforce judgments of foreign admiralty

13

courts, there is some recent, but scant, precedent supporting a related proposition that the federal admiralty jurisdiction provided by § 1333 should also accommodate suits to enforce foreign judgments based on claims of maritime character. In *Victrix*, we said in dictum that "an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim." *Victrix*, 825 F.2d at 713. And in *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527 (4th Cir. 2013), the Fourth Circuit approvingly construed the *Victrix* dictum as meaning that "the dispositive question is not whether the English Judgment issued from an 'admiralty court,' but rather, whether the claim itself is maritime in nature." *Id.* at 535; *see also* Harold K. Watson, *Transnational Maritime Litigation: Selected Problems*, 8 Mar. Law. 87, 104 n.102 (1983) (arguing that whether there is jurisdiction to recognize foreign judgments per *International Sea Food* should turn on the substantive nature of the foreign case, and not on whether the foreign court "was an 'admiralty court' in the sense of a specialized court").

Extending federal admiralty jurisdiction to suits to enforce foreign judgments adjudicating maritime claims undoubtedly serves the purposes intended by the *Penhallow* rule. That rule reflects numerous related policies that

14

shape admiralty jurisdiction in the United States. First, the rule reflects a preference for specialized admiralty courts for the resolution of maritime disputes because of their expertise in the arcane rules, nomenclatures, and traditions of the sea. Second, it promotes a desirable uniformity in matters of international trade. Third, it promotes international comity by facilitating the recognition of foreign judgments. Fourth, it reflects a constitutionally endorsed distribution of power between state and federal courts, which offers a forum for international disputes, which is — at least theoretically — less likely to be influenced by local bias. *See* Wythe Holt, *"To Establish Justice": Politics, the Judiciary Act of 1789, and the Invention of Federal Courts*, 1989 DUKE L.J. 1421, 1427-30 (describing the problem of local bias in state court admiralty proceedings in the 1770s). In combination, these policies all tend to promote international maritime commerce by facilitating the enforcement of the law of the sea — simplifying the enforcement of judgments (including enforcement of in rem jurisdiction against vessels), and protecting vulnerable parties such as foreign litigants and seamen (who are considered the "wards of admiralty," entitled to special solicitude because of the daily hazards of their work, *see Truehart v. Blandon*, 672 F. Supp. 929, 937 (E.D. La. 1987)).

These policies all relate far more to the maritime character of the underlying dispute than to the classification of the court that rendered the judgment. Thus, take for example, British and French seamen who suffer injury by reason of the unseaworthiness of a Greek vessel and obtain judgments against the vessel owner in their local courts. If the seamen subsequently sue in the United States to enforce their judgments, the policies underlying *Penhallow* argue in favor of allowing both of them to bring their suit in federal court under § 1333, rather than admitting the British plaintiff because the judgment in his favor was rendered by an admiralty tribunal while excluding the French plaintiff because his judgment was rendered by a court not specialized in maritime matters.[3] We accordingly have no hesitation in reaffirming the proposition of the *Victrix* dictum that federal admiralty jurisdiction extends to suits to enforce the judgments of

---

[3] Indeed, the *Vitol* court faced a similar situation, where the English Commercial Court and Admiralty Court had concurrent jurisdiction over the claim underlying the judgment that the plaintiff sought to enforce in federal court. *Vitol*, 708 F.3d at 531-32. The Fourth Circuit reasonably concluded that making federal subject matter jurisdiction turn on the happenstance of whether the parties had asked the English court to exercise its admiralty or commercial jurisdiction to adjudicate the concededly maritime claim would elevate form over substance. *See id.* at 535.

foreign courts deciding maritime claims, regardless of whether the judgments were rendered by specialized admiralty courts.

> **B.** **U.S. Law Appropriately Determines Whether a Foreign Judgment Was Rendered on an Admiralty Claim.**

The district court accepted the view that federal admiralty jurisdiction applies to suits to enforce foreign judgments, not only when the judgment was rendered by an admiralty court, but also when the claim upon which the judgment was rendered was maritime. The district court construed our *Victrix* dictum as meaning that the maritime nature of the claim must be determined by reference to the law of the nation that rendered the judgment. *See D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, No. 09 Civ. 7840, 2011 WL 1239861, at *3 (S.D.N.Y. Mar. 28, 2011) ("The question, then, is whether the English judgment was rendered in an exercise of the admiralty jurisdiction of the English court — that is, whether the claim adjudicated was, under English law, maritime in nature. As the Second Circuit Court of Appeals described in dicta in *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 'an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim.'"). The court rejected

17

the plaintiff's contention that federal admiralty jurisdiction encompasses suits to

enforce foreign judgments when the claim recognized in the foreign judgment

would have been deemed an admiralty claim under U.S. law. The court said:

> D'Amico argues, in essence, that a district court has admiralty jurisdiction to enforce a foreign judgment where the court would have had admiralty jurisdiction over the subject matter of the foreign dispute. That is not the case. An action to enforce a foreign judgment is a separate civil action imposing its own jurisdictional requirements, and a suit to enforce a judgment rendered on a maritime claim is not itself maritime in nature.

*D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, No. 09 Civ. 7840, 2011 WL

3273208, at *4 (S.D.N.Y. Aug. 1, 2011). The district court assumed that, because the

claim was not maritime under English law, it was not maritime for purposes of

determining admiralty jurisdiction.

We respectfully disagree. As noted above, had the district court been

speaking of federal question jurisdiction under 28 U.S.C. § 1331, the court would

undoubtedly have been correct. *See Stiller*, 324 F.2d at 628. But *Penhallow* imported

different considerations for determining whether a suit to enforce a foreign

judgment may be brought within the admiralty jurisdiction of the federal courts.

As these issues have arisen infrequently in cases where the foreign judgment was

*not* rendered by specialized admiralty court, there is no governing authority on whether the maritime nature of the underlying claim is more appropriately determined under the standards of U.S. or foreign law. We believe there are compelling reasons to find federal admiralty jurisdiction if a claim is maritime under the standards of U.S. law. We first address the issue of existing authority on the question.

While the District Court read our dictum in *Victrix* to mean that the maritime or non-maritime nature of the claim must be determined under the standards of the laws of the nation that rendered the judgment, as we read *Victrix*, it did not address which nation's law should be consulted to decide whether the claim underlying the foreign judgment of a non-admiralty court should be deemed maritime, and thus whether a suit to enforce that judgment lies within the federal admiralty jurisdiction. While arguments may be advanced on both sides as to the meaning of the opaque statement in *Victrix* that "an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim," it certainly does not constitute precedential authority that the standards of U.S. law are *not* pertinent to the inquiry.

19

In contrast, when the Fourth Circuit considered this issue in *Vitol*, it was clear the court looked to the maritime characterization of the claim under foreign law. Nonetheless, the *Vitol* decision did not constitute a precedent on the question whether the maritime character of the claim under U.S. law is pertinent, both because the *Vitol* court never considered the question whether U.S. law should be consulted, and because the answer would have been the same under either British or U.S. law, as the underlying claim (breach of the warranty of seaworthiness) is maritime in both nations. *Vitol* never considered whether the maritime character of the underlying claim under U.S. law standards justifies the exercise of federal admiralty jurisdiction.[4]

We know of no other appellate level precedents addressing the question of the pertinence of U.S. law in deciding whether the claim underlying the foreign judgment is of maritime nature, so as to justify the exercise of federal admiralty

---

[4] A district court in the Fourth Circuit, when confronted with a substantially similar question to the one we face here, construed *Vitol* (as do we) to have not addressed the question and concluded that U.S. rather than foreign law should determine whether the claim underlying a foreign judgment is maritime. *See Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-cv-658, 2014 WL 108897, at *3 (E.D. Va. Jan. 10, 2014).

jurisdiction over a suit to enforce the foreign judgment.

In rejecting the pertinence of U.S. law, the district court relied on two other strands of authority, which we do not believe are apposite. The court relied in part on an unpublished opinion of the United States District Court for the Western District of Washington, ruling that it lacked subject matter jurisdiction to enforce an English judgment on a contract of charter because the suit to enforce the judgment needed to satisfy federal jurisdictional requirements and was "untouched" by the substantive law supporting the judgment. *Bergen Indus. & Fishing Corp. v. Joint Stock Holding Co.*, No. 01-cv-1994, 2002 WL 1587179, at *1 (W.D. Wash. Feb. 25, 2002). However the *Bergen* court relied for this proposition on a misinterpretation of the Restatement (Third) of Foreign Relations § 481 cmts. g, h (1987). The Restatement commentary cited by the *Bergen* court focuses on the issue of personal jurisdiction "over the judgment debtor or his property." It does not address the separate issue whether a federal court has subject matter jurisdiction over the suit.

The district court also relied on cases holding that an action to enforce a *settlement agreement* cannot be heard in admiralty even where the underlying

dispute was brought in admiralty. *See Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991); *Pac. Sur. Co. v. Leatham & Smith Towing & Wrecking Co.*, 151 F. 440, 443 (7th Cir. 1907) (cited in dicta in *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)). The reasoning of this line of cases is that *an agreement* to pay damages "neither involves maritime service nor maritime transactions." *Pacific Sur. Co.*, 151 F. at 443. Thus an agreement to pay to resolve a maritime claim is not itself a maritime contract and does not confer admiralty jurisdiction over a subsequent suit on that agreement to resolve the underlying maritime claim.

The considerations are different, in our view, when a court has adjudicated the underlying claim in the plaintiff's favor. In the settlement context, agreement between the parties does not legitimate the original maritime claim. There is no telling whether the defendant who agrees to pay money in settlement of the claim is in any way by doing so acknowledging validity of the claim, or in contrast is continuing to deny it categorically while agreeing to pay some money to avoid the inconvenience, expense, and risk of further litigation. The settlement extinguishes that claim through private contract without validating it. In contrast, where a court has rendered a final judgment on the claim, the claim has been

validated. If that claim was of maritime nature, the maritime nature of the claim has been validated, furnishing good reason for the dispute over the enforceability of the judgment to be heard as a maritime matter in the admiralty jurisdiction of the federal court.

Further, the district court's reasoning with respect to its analogy to settlement agreements is in conflict with the *Penhallow* rule. *Penhallow* posits that the question of the enforceability of the judgment of a foreign maritime court is itself a maritime matter to be heard in the admiralty jurisdiction of United States courts, like a suit on a maritime claim. The district court accepted that the *Penhallow* principle should extend not only to the judgments of foreign admiralty courts but also to the judgments of foreign courts enforcing claims deemed maritime under the law of that nation. We do not see how that principle is compatible with the district court's reasoning that suits to enforce foreign judgments may not be brought in federal courts absent a separate source of federal jurisdiction. The question at issue is the proper scope of the *Penhallow* rule.

Accordingly we do not agree with the district court's conclusion that existing precedent — although authorizing suits to enforce foreign judgments of

non-admiralty courts if the underlying claim was maritime under the law of the nation that rendered the judgment — does not authorize extending admiralty jurisdiction to such suits when the claim was maritime according to U.S. law standards. We know no precedent for that proposition.

Finally, if the principle is to be extended, as we stated in *Victrix*, to open federal admiralty jurisdiction not only to suits to enforce the judgments of foreign admiralty courts, but also to suits to enforce the judgments of foreign non-admiralty courts when the underlying claim validated by the judgment was maritime, we think that there are strong theoretical and practical reasons for assessing the maritime nature of the claim under U.S. admiralty standards. The reasons are numerous.

Of the theoretical reasons, the first is a principal enshrined in the Constitution that the jurisdiction of the federal courts should extend to maritime matters. Thus, Article III provides that "[t]he judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. And the policy of the United States to place maritime matters in the federal courts is so strong that § 1333 makes federal court jurisdiction exclusive. Although, as a

general proposition, there is widespread agreement throughout the world which kinds of matters are maritime and which are not, there is no assurance that some other nation might not define its own maritime jurisdiction more broadly, or more narrowly, than we do. It seems reasonable to assume that the Framers of the Constitution and Congress wanted to ensure that matters deemed maritime *under our laws* have access to our federal courts. There is no reason to suppose that the Founders or Congress would have wished to exclude from the admiralty jurisdiction matters that U.S. law deems maritime, merely because another nation does not consider them maritime. The fact that some nation, unlike ours, does not reserve a special jurisdiction for maritime matters, or classify maritime matters as subject to a discrete body of laws, does not derogate from the policies of our law to provide for the adjudication of matters we regard as maritime in our federal courts.

Second, choice of law principles support using U.S. law's characterization. The question whether a claim belongs in one or another court is jurisdictional and procedural.   Under choice of law principles, the law of the forum state is used for such a question. *See* Restatement (Second) of Conflict of Laws § 123 (1971) ("Each

state determines which of its courts or systems of courts, if any, are competent to hear a particular case over which the state has judicial jurisdiction. So it is for each state to decide whether an action on a given claim shall be brought in a court of law, of equity, of probate or of admiralty.").[5]

Third, international comity favors allowing federal jurisdiction over suits to enforce foreign maritime judgments to the extent that we would wish for reciprocal enforcement of U.S. judgments in foreign courts. The concern for the enforceability of the foreign judgment is of far greater importance to international comity than whether the U.S. court agrees with the foreign nation as to the

---

[5] This analysis is supported by our recent analogous discussion in *Blue Whale Corp. v. Grand China Shipping Development Co.*, 722 F.3d 488 (2d Cir. 2013). There, we faced the question which nation's law should apply when deciding whether a plaintiff "'has a valid prima facie admiralty claim'" for purposes of attachments under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See id.* at 493 (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)). In deciding the choice of law issue, we noted: "[W]hat is clear is that federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law." *Id.* at 494 (citation omitted).

maritime nature of the claim. Foreign interests seeking to enforce a foreign judgment, who are denied access to federal court will not take comfort in (or believe that comity has been served by) the fact that the U.S. court followed their nation's law to determine whether the claim was maritime.

Finally, some nations neither have specialized admiralty courts nor classify maritime matters as distinct from other areas of commerce. The fact that a foreign nation does not recognize in its laws a categorical distinction which U.S. law deems so important should not frustrate the policy of U.S. law to place maritime disputes in federal courts.

There are also *practical* reasons that strongly favor using U.S. law to determine whether the claim underlying a foreign judgment was maritime, so that the suit to enforce the judgment should be allowed within the federal admiralty jurisdiction.

First, questions of subject matter jurisdiction should be amenable to quick and relatively certain resolution. If the characterization of the claim under foreign law is controlling, the parties will be compelled in many cases to carry on an expensive, cumbersome litigation involving dueling experts on foreign law,

merely to determine whether the suit belongs in federal or state court.

Federal courts have a duty to inquire into their subject matter jurisdiction sua sponte, even when the parties do not contest the issue. Especially as the foreign law may be in a foreign language, it is not clear how a federal court would go about determining whether it has jurisdiction. If federal subject matter jurisdiction is not raised until the appeal, it is unclear how the court of appeals would deal with the question (foreign law being a question of fact) without remanding to the district court. Moreover, because subject matter jurisdiction cannot be waived, if a defect in the court's subject matter jurisdiction becomes apparent only after the litigation, that defect will render the prior litigation useless. The need for certainty is all the greater here, as § 1333 vests admiralty jurisdiction *exclusively* in the federal courts. 28 U.S.C. § 1333. Thus, parties concerned about uncertain federal jurisdiction cannot, as is generally the case, avoid the problem by bringing suit in a state court of concurrent (and unquestionable) jurisdiction. Regardless whether the litigation is conducted in federal or state court, the losing party would be able to attack the judgment after

the fact merely by offering expert evidence that the claim was or was not deemed maritime under the foreign law.[6]

We therefore conclude that a suit to enforce a foreign judgment may be heard in the federal admiralty jurisdiction under § 1333 if the claim underlying the judgment would be deemed maritime under U.S. law.[7]  Accordingly, this suit

---

[6] Enforcing foreign judgments rendered on claims considered maritime under U.S. law has the additional salutary effect of clearly establishing federal jurisdiction as a matter of law where complicated factfinding might otherwise be necessary, even under the literal terms of *Penhallow*'s rule of enforcing the judgments of foreign admiralty courts. Thus, for example, a foreign court might have jurisdiction over maritime and other non-maritime commercial claims. Or it might have jurisdiction over personal injuries suffered by workers employed in motor, air, rail, and sea transportation. Whether such a court is a foreign admiralty court may not be obvious. But if the foreign court renders a judgment on a claim for personal injury suffered by a seaman as a result of the unseaworthiness of a vessel, the use of U.S. law to conclude that the claim is maritime obviates the need under *Penhallow* (or otherwise) to inquire into the intricacies of the foreign judicial system.

[7] We have outlined reasons why we believe that admiralty jurisdiction under § 1333 includes the authority to enforce foreign judgments on claims that would be considered maritime under U.S. law. We have no reason in this case to decide whether the maritime nature of the claim under the law of the nation that rendered the judgment would also suffice to bring a suit on the judgment within the jurisdiction established by § 1333. Our ruling today would remain the same regardless of whether the maritime classification of the underlying claim under the foreign substantive law is sufficient to bring the suit within § 1333 jurisdiction.

29

to enforce an English judgment comes within the admiralty jurisdiction of § 1333 if the underlying claim on the FFA is deemed maritime under the standards of U.S. law. Because the district court did not consider that question below, we remand to the district court to make that determination in the first instance.[8]

## CONCLUSION

For the above reasons, the judgment of the district court is VACATED, and the case is REMANDED.

---

[8] We note that Primera also contends that D'Amico forfeited the argument that U.S. law should determine the maritime nature of the claim. We disagree. We believe this was adequately raised by D'Amico in the proceedings prior to the entry of judgment. *See* Pl.'s Mem. Opp'n Def.'s Mot. Dismiss 6-13, Nov. 20, 2009, S.D.N.Y. ECF No. 16 (arguing that the district court had admiralty jurisdiction because FFAs are maritime under both U.S. and English law).