WILKINSON, Circuit Judge,
concurring:
I readily concur in Judge Agee’s fíne opinion in this case. Notwithstanding my respect for English law, and in full agreement with the majority opinion, I write to underscore my conviction that the availability of federal admiralty jurisdiction simply must be determined by domestic, rather than foreign, law.
First, applying the law of the forum— here, federal court — accords with basic choice-of-law principles. In Blue Whale Corp. v. Grand China Shipping Development Co., 722 F.3d 488, 494 (2d Cir.2013), the Second Circuit held that the question of whether a claim “sounds in admiralty” is “inherently procedural by virtue of its relationship to the courts’ subject matter jurisdiction,” that jurisdiction being, in the Second Circuit’s view, a procedural matter. Because courts generally apply their own procedural law, the jurisdictional issue “is controlled” by the law of the forum: federal maritime law.
In fact, the argument for applying domestic law is even stronger than the Second Circuit suggested. Rules of jurisdiction are conceptually distinct from rules of procedure; the former determine whether a court is competent to hear a particular case, whereas the latter govern how the court is to hear it. See Bowles v. Russell, 551 U.S. 205, 210-11, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007); Scott Dodson, In Search of Removal Jurisdiction, 102 Nw. U.L.Rev. 55, 59-60 (2008).
Therefore, a court could theoretically import foreign procedure, just as it might use foreign substantive law as its rule of decision. Strictly speaking, however, it is incoherent to speak of adopting foreign law to decide the jurisdictional question. Jurisdiction is the sovereign grant of authority to make legally binding rules or determinations in a particular situation. To allow foreign law to dictate the availability of subject-matter jurisdiction would be to divest the Constitution and Congress of their sovereign authority to decide the extent of the power of the judicial branch. In other words, federal courts would no longer be acting as courts of the United States, since their power would be exercised pursuant to a grant of authority from a different sovereign — here, the foreign jurisdiction. It would, as Justice Story *364 recognized in a related context, “annihilate the sovereignty and equality of the nations,” and violate the principle that “every nation must judge for itself, what is its true duty in the administration of justice.” Joseph Story, Commentaries on the Conflict of Laws §§ 32, 34 (1834).
Second, considerations of administrability counsel in favor of using domestic, rather than foreign, law to determine subject-matter jurisdiction. Even if we limit ourselves to the many major maritime commercial powers, that would still require courts seeking to determine jurisdiction to analyze a different body of foreign law every time a contract with a different choice-of-forum or -law clause or every time a judgment from a different rendering jurisdiction came before them. See D’Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd., No. 11-3473-cv, 756 F.3d 151, 161-62, 2014 WL 2609648, at *8 (2d Cir. June 12, 2014). To make matters worse, other countries may not have the same conceptual frameworks for determining jurisdiction or maritime status as we do. This will often make asking whether a contract or judgment is maritime under their law for the purposes of our requirements of subject-matter jurisdiction anything but an apples-to-apples analysis, if not entirely meaningless.
Not only would this inquiry be incongruous, it would also impose an immense administrative burden on the judicial process. Our own law distinguishing maritime from non-maritime contracts has frequently been pilloried as opaque and arbitrary. See, e.g., Charles L. Black, Jr., Admiralty Jurisdiction: Critique and Suggestions, 50 Colum. L.Rev. 259, 264 (1950) (“The attempt to project some ‘principle’ is best left alone. There is about as much ‘principle’ as there is in a list of irregular verbs.”). To force courts and litigants down the rabbit hole of incorporating the law of various foreign countries at the jurisdictional stage would only make matters worse. See D’Amico, 756 F.3d at 161-62, 2014 WL 2609648, at *8. Limiting the inquiry to the maritime status of a contract or judgment under domestic law is the best and most administrable option.
Third, applying domestic law in this case accords with the Constitution’s and Congress’s vesting of admiralty jurisdiction in federal courts. Imagine what would happen if we held that foreign law controlled the jurisdictional inquiry here. The federal court would lack admiralty jurisdiction and appellee would likely thus have to file suit in state court. (The same situation would occur if the parties were U.S. but non-diverse.) Thus, the state court would probably be the only available forum to hear the claim and the special procedures associated with federal admiralty jurisdiction might not be available.
None of this is to say that state courts are incapable of properly adjudicating maritime issues. But it does fly in the face of the Constitution’s vesting of subject-matter jurisdiction in Article III courts over “all Cases of admiralty and maritime Jurisdiction,” U.S. Const. art. III, § 2, cl. 1 (emphasis added), and Congress’s grant to federal district courts, virtually unchanged since the Judiciary Act of 1789, of subject-matter jurisdiction over “[a]ny civil case of admiralty or maritime jurisdiction,” 28 U.S.C. § 1333(1) (emphasis added). Whether to promote greater uniformity in maritime law or to ensure the vindication of American maritime interests, the Framers clearly wanted federal courts to possess admiralty jurisdiction over those cases that the courts believed to be maritime in nature. See D’Amico, 756 F.3d at 160-61, 2014 WL 2609648, at *7. Allowing foreign law to control the jurisdictional inquiry would subvert this goal and constrict the space that federal courts, *365 already sandwiched between foreign and state law, possess to sit in admiralty.
Fourth and finally, applying domestic rather than foreign law in determining subject-matter jurisdiction advances the national policy goals of the Constitution’s grant of admiralty jurisdiction to federal courts: the “advantages resulting to the commerce and navigation of the United States.” DeLovio v. Boit, 7 F.Cas. 418, 443 (C.C.D.Mass.1815) (No. 3776) (Story, J.); see also Sisson v. Ruby, 497 U.S. 358, 367, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (“The fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce....”) (internal quotation marks omitted). This is because, in determining what counts as advancing the United States’ maritime interests, we must by necessity refer to our own conception of what counts as “maritime”; after all, “we have a maritime law of our own.” The Lottawanna, 88 U.S. 558, 574, 21 Wall. 558, 22 L.Ed. 654 (1874). Although this particular contract is between two non-U.S. parties engaging in a private financial transaction, the United States still has an interest in providing a forum for this type of contract, especially since U.S. parties to a similar arrangement would benefit from being able to seek enforcement.
Appellant argues that international comity requires us to use foreign law to determine subject-matter jurisdiction. See Appellant’s Br. at 18 & n. 6. It notes that, in the interests of international comity, federal courts exercise admiralty jurisdiction over judgments issued by foreign tribunals sitting in admiralty, even if the judgments would not otherwise be treated as maritime under U.S. law. See Int’l Sea Food Ltd. v. M/V Campeche, 566 F.2d 482, 485 (5th Cir.1978); see also Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 536 & n. 4 (4th Cir.2013).
Appellant would have us extend this rule and declare that federal courts must refuse to assert admiralty jurisdiction over contracts or judgments characterized as non-maritime by their rendering forums. Neither logic nor comity dictates this result. Just because we accept the foreign characterization of a dispute for the purpose of exercising admiralty jurisdiction— a jurisdictional expansion — does not mean that we must also accept it for the purpose of refusing to hear a case in admiralty-a jurisdictional contraction. The former accommodation is supported by considerations of international comity; the latter is not.
Comity is satisfied as long as one court enforces the judgment of another court. Thus, it should not matter to the rendering court under what technical head of jurisdiction its judgment is ultimately enforced, at least where, as here, there is no indication that the rendering forum intended its judgment to be effectuated in only a particular way. See D’Amico, 756 F.3d at 161-62, 2014 WL 2609648, at *8. It is hard to fathom the British High Court of Justice caring what jurisdictional subclause of Article III, Section 2 the federal court invokes to enforce the judgment. It should be enough that a plaintiff in possession of a favorable English judgment is given the maximum constitutionally permissible freedom to choose his preferred forum — here, a federal court sitting in admiralty. If anything, such a rule enhances, rather than diminishes, comity. It may also make it easier for U.S. parties to enforce contracts such as the one here in foreign maritime courts.
To be sure, foreign law is not irrelevant to the determination of whether federal admiralty jurisdiction exists. The status of the contract or judgment under foreign law informs the inquiry in important ways. The question of whether a legal issue is maritime in nature is not an exercise in *366 logic chopping wholly internal to the conceptual schemas of American jurisprudence; instead, it asks whether, as a practical matter, the “principal objective of [the] contract is maritime commerce.” Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 25, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). The reasoned judgments of experienced jurists, foreign or domestic, on this issue are due respectful consideration by federal courts. Additionally, whether other countries characterize a contract as maritime might have collateral consequences that may affect its real-world impact on maritime commerce — for example, in terms of how the contract is interpreted overseas or what procedures its interpretations are afforded.
Nevertheless, the ultimate question of whether a contract or judgment is maritime for the purpose of supporting federal admiralty jurisdiction must, for the reasons explained above, be answered by reference to domestic rather than foreign law. While foreign law may or may not be instructive under the circumstances, it cannot determine the subject matter jurisdiction of an American court. And, as ably demonstrated in Judge Agee’s majority opinion, the contract here has a “genuinely salty flavor.” Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Thus, federal admiralty jurisdiction properly lies.